IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOES 1-4, <br><br> Plaintiffs, <br><br> v. <br><br> RED ROOF INNS, INC., *et al.*, <br><br> Defendants. | CIVIL ACTION FILE NO. <br><br> 1:21-cv-04278-WMR |

**Defendant Varahi Hotel, LLC's Brief in Support of its Motion for Summary Judgment on the Claims of Plaintiff Jane Doe 1**

Warner S. Fox
Georgia Bar No. 272654
wfox@hpylaw.com
C. Shane Keith
Georgia Bar No. 411317
skeith@hpylaw.com
Elliott C. Ream
Georgia Bar No. 528281
eream@hpylaw.com

**HAWKINS PARNELL & YOUNG, LLP**
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
(855) 889-4588 (facsimile)

Counsel for Defendant
Varahi Hotel, LLC

# TABLE OF CONTENTS

RELEVANT FACTS ........................................................................................... 1

ARGUMENT AND AUTHORITIES ..................................................................... 6

   1. Plaintiff's negligence claim fails. ............................................................. 6

      A. Plaintiff's negligence claim fails because she was a trespasser. ......... 6

      B. Plaintiff's negligence claim fails because it is time barred. ............... 8

   2. Summary judgment is required based on Plaintiff's failure to join indispensable parties. ................................................................................ 9

   3. Plaintiff cannot recover under the Georgia RICO statutes. .................... 13

CONCLUSION ................................................................................................ 15

LR 7.1(D), N.D. GA. CERTIFICATE OF COMPLIANCE ......................................... 16

CERTIFICATE OF SERVICE ............................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Allum v. Valley Bank*, 849 P.2d 297 (Nev. 1993) ............................................. 14

*Bennett v. M/V Keeley*, 2008 U.S. Dist. LEXIS 134018 (D.S.C. 2008) ..... 11, 12

*Crs Sirrine v. Dravo Corp.*, 219 Ga. App. 301 (1995) ........................................ 11

*Donovan v. Robbins,* 752 F.2d 1170 (7th Cir. 1984) ......................................... 10

*Environmental Conservation Org. v. Bagwell,* 2005 U.S. Dist. LEXIS 22027 (N.D. Tex. Sept. 30, 2005) ............................................................................ 10

*Frank Mayes & Assocs. v. Massood*, 238 Ga. App. 416 (1999) ........................... 7

*Gentry v. Volkswagen of Am.*, 238 Ga. App. 785 (1999) .................................... 15

*Gilmore v. List & Clark Constr. Co.,* 866 F. Supp. 1310 (D. Kan. 1994) ......... 10

*Johnston v. Smith,* 1997 U.S. Dist. LEXIS 20167 (N.D. Ga. 1997) ................. 10

*Lehman Bros., Inc. v. Wu,* 294 F. Supp. 2d 504 (S.D.N.Y. 2003) ..................... 10

*Lyle v. Food Lion, Inc.,* 954 F.2d 984 (4th Cir. 1992) ....................................... 10

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ................................................................................................ 13

*Malibu Media, LLC v. Fitzpatrick*, 2013 U.S. Dist. LEXIS 149495 (S.D. Fla. 2013) ............................................................................................. 9, 11

*Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632 (2008) ................. 6

*Moore-Sapp Investors v. Richards*, 240 Ga. App. 798 (1999) ........................ 7, 8

*Mortgages, Inc. v. United States Dist. Court,* 934 F.2d 209 (9th Cir. 1991) ................................................................................................. 10

*Narajian Capital, LLC v. Clark*, 357 Ga. App. 685 (2020) ......................... 14, 15

*Oracle Am., Inc. v. Micron-Tech. Inc.*, 817 F. Supp. 2d 1128 (N.D. Cal. 2011) ................................................................................................ 11

*Scriver v. Lister*, 235 Ga. App. 487 (1998) ......................................................... 11

*Stopiano v. Leon's Fence & Guardrail, LLC*, 346 Ga. App. 18 (2018) .............. 9

*Todd v. F. W. Woolworth Co.*, 258 Ga. 194 (1988) ............................................. 6

*Tucker Nursing Ctr., Inc. v. Mosby*, 303 Ga. App. 80 (2010) ...................... 11, 12

*United States v. Domestic, Industries, Inc.*, 32 F. Supp. 2d 855
 (E.D. Va. 1999) ................................................................................................ 10

*Winston v. Walsh*, No. 5:19-cv-00070-TES, 2019 U.S. Dist. LEXIS
 115823 (M.D. Ga. July 12, 2019) .................................................................... 9

*Wylie v. Denton*, 323 Ga. App. 161 (2013) ........................................................ 15

**Statutes**

18 U.S.C. § 1595 .............................................................................................. 9, 10

O.C.G.A. § 16-5-46 .............................................................................................. 15

O.C.G.A. § 16-6-9 ........................................................................................... 7, 14

O.C.G.A. § 51-3-1 .................................................................................................. 6

O.C.G.A. § 51-3-2 .................................................................................................. 8

O.C.G.A. § 51-3-3 .................................................................................................. 7

O.C.G.A. § 9-3-33 .................................................................................................. 8

O.C.G.A. § 9-3-99 .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 19 ............................................................................................. 9, 13

**Treatises**

PROSSER AND KEETON ON THE LAW OF TORTS ................................................. 12

## Defendant Varahi Hotel, LLC's Brief in Support of its Motion for Summary Judgment on the Claims of Plaintiff Jane Doe 1

### RELEVANT FACTS

Since mid-December 2012, Varahi has owned and operated the Smyrna Red Roof.[1] JD1 claims that she was the victim of sex trafficking, which began at the end of 2012 or the beginning of 2013 and concluded in 2017,[2,3] with some of those instances of trafficking allegedly occurring at the Smyrna Red Roof.[4]

JD1's story of her introduction to the world of sex trafficking reads like a Hollywood script. Indeed, it is very reminiscent of the 2008 action-thriller *Taken*.[5] According to her,[6] she and her boyfriend were at one of the Atlanta parks, either Centennial or Piedmont, and they got into a fight, and he left, leaving her stranded. She did not know how to use MARTA and she didn't have a cell phone and waited at the park for 20-30 minutes alone. Ultimately an

---

[1] *See* Doc. 6, ¶255.

[2] JD1's deposition began on June 10, 2022 and was completed the following day, which resulted in two volumes of deposition transcript. Citations to the transcript of that first portion of the deposition will be cited as "JD1 Depo. Vol. 1." Citations to the second volume will be cited as "JD1 Depo. Vol. 2."

[3] JD1 Depo. Vol. 1, p. 14, ll. 6-9;  p. 14, l. 19 - p. 15, l. 15; p. 41, ll. 3-13.

[4] *See generally* Doc. 3.

[5] In *Taken,* Liam Neeson plays a retired CIA operative whose daughter is kidnapped in Paris by Albanian gangsters, who offer her for sale on the black market. Neeson's character, with the help of some his former CIA colleagues, tracks down the kidnappers and ultimately rescues his daughter and her friend from the clutches of the gangsters. The film was a success, spawning two sequels, and it includes Neeson's memorable "very particular set of skills" speech.

Interestingly, many people in the human trafficking field take issue with *Taken's* depiction of human and sex trafficking. *See, e.g., The Liam Neeson-shaped elephant in the room*, available at https://polarisproject.org/telling-the-real-story-of-human-trafficking/. This criticism and the general observation that sex trafficking does not happen in the real world like it was depicted in *Taken*, of course, makes JD1's very similar story all the more remarkable.

[6] The entire story of her introduction into the world of sex trafficking is found at JD1 Vol. 1, p. 109, l. 16 – p. 116, l. 4.

unknown man approached her and asked if she needed a ride, which she accepted.

At the time, she lived in north Fulton. She got into this unknown man's car, and they started towards Alpharetta on GA400. As they approached Exit 10, the Old Milton Parkway exit, she told the man that he was missing her exit. At that point, "he grabbed the back of [her] head and started bashing [her] face into the window and into the dashboard,"[7] which led her to black out.

When she awoke, she "had been thrown over someone's shoulder" and she "was being tied to a bed."[8] There were several people and "they put an IV in [her] arm."[9] They used that IV to dose her with heroin, which she stayed on for several days. During this time, she was raped by several people.[10]

At the end of this ordeal, a man came and "pretended" to save her, but he "really just bought [her]."[11] This man picked her up, took her to another hotel and she had sex with him.[12] According to her, this man "instructed [her] that [she] was going to be working for him. He just gave [her] the rundown of what all [she] would be doing, having sex for money or exchanging sexual favors for money."[13],[14]

---

[7] JD1 Vol. 1, p. 110, ll. 12-14.
[8] JD1 Vol. 1, p. 111, ll. 8-10.
[9] JD1 Vol. 1, p. 110, l. 11.
[10] JD1 Vol. 1, p. 111, l. 6 – p. 112, l. 24.
[11] JD1 Vol. 1, p. 113, ll. 7-9.
[12] JD1 Vol. 1, p. 117, ll. 9-12.
[13] JD1 Vol. 1, p. 117, ll. 13-16.
[14] She later clarified exactly what she was instructed and testified that this man told her that she "was to f-ck the clients and get their money and give it to him." (JD1 Vol. 1, p. 126, ll. 1-2).

2

She then had her first date with a 63-year-old man named John Phillip Harris.[15] He was staying at the Atlanta Hotel in Roswell, where they had sex.[16] After that, the two of them headed to Mr. Harris' storage unit, and while en route there, they were pulled over by police.[17]

The police were suspicious of a 63-year-old man with a young woman, who he identified as his granddaughter, so they ran Mr. Harris' information and tried to run Plaintiff's, but she'd provided false identifying information.[18] Ultimately, after being told that the police would get a fingerprint scan and identify her, Plaintiff revealed her true name to the police, and they ran that.[19]

The search returned three outstanding warrants – one out of Johns Creek for felony taking, one out of DeKalb County for shoplifting, and another from Gwinnett County for a probation violation.[20] The police officer confirmed all three warrants, and Plaintiff was "placed under arrest…. handcuffed … searched … and then taken to Alpharetta jail."[21] Plaintiff revealed nothing about her supposed kidnapping, rape, and torture to the police because they "were not her friend at this point."[22] All this occurred on August 24, 2012.[23]

---

[15] JD1 Vol. 1, p. 117, ll. 17-21.
[16] JD1 Vol. 1, p. 118, ll. 3-11.
[17] JD1 Vol. 1, p. 118, l. 3 – p. 120, l. 20.
[18] *Id.*
[19] *Id.*
[20] JD1 Vol. 1, p. 120, ll. 14-16.
[21] JD1 Vol. 1, p. 120, ll. 17-20.
[22] JD1 Vol. 1, p. 122, ll. 9-24.
[23] JD1 Vol. 1, Ex. 9.

Plaintiff spent some time in jail, exactly how much time she spent on this occasion she cannot recall, and was ultimately released.[24] She went home to her parents' house and, according to her, the man that had bought her from the kidnappers sat outside her parents' house in his car.[25] Ultimately, she "walked up to him, and he had guns in his lap, and [she] was given an ultimatum. [She] was either going to leave with him, or he was going to shoot up [her] house."[26] So she left with him and ran away from this man again and, after the second departure from him, she was picked up by her main trafficker Jayson Johnson a/k/a CB.[27] Of course, none of this occurred at the Smyrna Red Roof.

During her time in the commercial sex world, Plaintiff alleges that she was trafficked by no less than 15 men[28] and worked out of at least 15 hotels.[29] She has filed suit against only 4 of the hotels and none of the alleged traffickers.

This is remarkable considering the story she told about one, if true, harrowing incident involving her alleged trafficker CB. JD1 testified that she was

---

[24] JD1 Vol. 1, p. 127, l. 21 – p. 128, l. 11.

[25] JD1 Vol. 1, p. 130, l. 7 – p. 131, l. 131.

[26] JD1 Vol. 1, p. 130, l. 21 – p. 131, l. 1.

[27] JD1 Vol. 1, p. 131, ll. 2-5.

[28] Plaintiff identified the following men as her traffickers: Anthony Shivers, Kwan, CB, Gutta, Applehead, Batchi, Anthony Crumbley, Sosa, Panama, Nitty, Bagz, Traddle, Paris, Black and Gutta. (JD1 Vol. 1, p. 172, ll. 2-25).

[29] Plaintiff identified the following hotels as places she was trafficked: (1) Best Value Inn by Vantage, Peachtree Street; (2) Cheshire Motor Inn, Cheshire Bridge Rd.; (3) Homewood Suites, Buckhead; (4) Hampton Inn, Cumberland Pkwy.; (5) Hampton Inn, N. Druid Hills Rd.; (6) Holiday Inn Express, Chamblee Dunwoody Rd.; (7) Hometown Studios f/k/a Suburban Extended Stay Lodge, Chamblee; (8) LaQuinta Inn, Alpharetta; (9) LaQuinta Inn, Buckhead; (10) Microtel Inn & Suites near Buford High-way; (11) Smyrna Red Roof; (12) Atlanta Red Roof; (13) Residence Inn, Piedmont Rd.; (14) Knight's Inn near Newnan or McDonough; and (15) – (19) four plus Marriott-branded properties around the metro-area. (JD1 Vol. 1, Ex. 3, p. 24; Vol. 1, p. 55, ll. 9-23).

4

beaten, tortured and mutilated at the LaQuinta Inn off Northpoint Parkway in Alpharetta. She testified that, at one point, CB "started selling meth, and he decided to try it, and he had come back [to the LaQuinta Inn] and gotten really paranoid."[30] She said that she "guess[es] that guess he thought she was going to rob him" and he lashed out.[31]

According to her testimony, "he beat [her] for six and a half hours, and then he sodomized [her]. He raped [her]. He mutilated [her]. He raped [her] with power tools."[32] The mutilation consisted of him "[taking] a razor blade to [her] … shov[ing] a pillow over [her] face" and cutting off "half" of her clitoris.[33] Again, she has not sued this person or this hotel.

According to Plaintiff, from the time that she met CB in 2012 to her departure from the commercial sex world in January 2017, there was a not a single day, when she was free,[34] that she did not have sex for money.[35] According to her, during that time, *every single day* she was free, she had sex for money. And, importantly, she admitted that every time that she went to the Smyrna Red Roof, she was there to have sex for money.[36, 37]

---

[30] JD1 Vol. 1, p. 210, ll. 18-25.

[31] JD1 Vol. 1, p. 210, ll. 24-25.

[32] JD1 Vol. 1, p. 211, ll. 1-4.

[33] JD1 Vol. 1, p. 63, l. 19; p. 64, ll. 4-7; p. 211, ll. 19-23.

[34] Plaintiff was incarcerated numerous times during her time in the commercial sex world. JD1 Vol. 1, p. 178, ll. 11-22.

[35] JD1 Vol. 1, p. 178, l. 16 – p. 179, l. 3.

[36] JD1 Vol. 2, p. 368, l. 13 – p. 369, l. 2.

[37] Plaintiff had a whole series of allegations regarding the alleged involvement of Forrest Castille, a former Smyrna Red Roof employee, and his affiliation with her pimps and his facilitation of them. Mr. Castille denied any involvement. She also alleged that she had sex for money with a man she claimed was the owner of the Smyrna Red Roof. These specious allegations of nefarious conduct are irrelevant

5

## ARGUMENT AND AUTHORITIES

### 1. *Plaintiff's negligence claim fails.*

#### A. *Plaintiff's negligence claim fails because she was a trespasser.*

It is indisputable that Plaintiff was a trespasser at Varahi hotels. A trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another. *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 633-34 (2008). A person is an invitee if her presence on the property is of mutual benefit to both her and the landowner. *Id.* Plaintiff's claims, however, rest entirely on the notion her presence was to her detriment, not her benefit. Moreover, it is an inescapable fact that Plaintiff was present on Varahi's premises to break the law and commit the crime of prostitution.

O.C.G.A. § 51-3-1 requires that a landowner exercise ordinary care in keeping the premises and approaches safe for invitees. But "this statute does not purport to govern every instance of one going upon the land of another. Only where the owner or occupier invites, induces, or leads another to come on his land for a lawful purpose is the statute implicated." *Todd v. F. W. Woolworth Co.*, 258 Ga. 194, 195 (1988). Plaintiff was not on the property for a lawful purpose and thus the Georgia premises liability invitee statute does not apply.

Plaintiff was, instead, a trespasser and a landowner is under no duty to keep premises in a safe condition for the benefit of trespassers or bare

---

and are immaterial to the arguments raised herein. Varahi brings them up now lest it be accused of avoiding them later. But, as noted, they simply are not relevant to the issues at hand.

6

licensees. *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1999). "To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character." *Id.*

"A lawful possessor of land owes no duty of care to a trespasser except to refrain from causing a willful or wanton injury." O.C.G.A. § 51-3-3. Moreover, an owner or occupier of real property owes no duty to keep the premises safe for a trespasser present without his knowledge, *even if the owner or occupier generally knows that it is customary for trespassers to enter his property. Frank Mayes & Assocs. v. Massood*, 238 Ga. App. 416, 418 (1999).

The undisputed evidence is that Plaintiff was present at the Smyrna Red Roof to engage in commercial sex and perhaps peddle drugs. Whether one calls what she was doing trafficking or prostitution, the fact remains that she was present at the hotel to engage in sexual activity for money and that is a crime.

By Plaintiff's own account, she was not present on the property for any lawful purpose. Instead, she was there to commit the crime of prostitution. O.C.G.A. § 16-6-9 is the statute that defines prostitution in Georgia. At the time of the alleged trafficking, Georgia's prostitution statute provided that a "person commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act, including but not limited to sexual intercourse or sodomy, for money or other items of value."[38]

---

[38] *See* O.C.G.A. § 16-6-9 (2012-2017 Versions).

7

This is precisely what Plaintiff claims she was on the property to do. And this is all that she claims she was on the property to do. She was present to break the law.

As she was not there for a lawful purpose, she was either a licensee or a trespasser.[39] In contrast to an invitee, under O.C.G.A. § 51-3-2 (b), a landowner is "liable to a licensee only for willful or wanton injury." As the Court of Appeals has explained: "To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and things of that character." *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1999) (cleaned up). Here, there was no pitfall, mantrap or anything of the like.

In short there is no evidence of willful or wanton injury by Varahi. As a result, Varahi is entitled to summary judgment on the negligence claims.

  B. *Plaintiff's negligence claim fails because it is time barred.*

Additionally, Plaintiff's negligence claims are barred by the applicable statute of limitations. In Georgia, there is a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Plaintiff alleges that her trafficking ended in January 2017, which would have been the last month in which she could have been "trafficked" at the hotel. Thus, absent a tolling provision, the statute of limitations on these claims ran in January 2019. This suit was not

---

[39] In light of her concession that her purpose on the property was always to have sex for money, she was a trespasser; but that really doesn't matter since the duty owed in these circumstances is the same to a licensee or trespasser.

filed until August 2019, outside the two-year statute of limitations. As a result, her negligence claims are barred.[40]

## 2. *Summary judgment is required based on Plaintiff's failure to join indispensable parties.*

Fed. R. Civ. P. 19(a) requires that a party be a joined if its absence would prevent the existing parties from obtaining complete relief or the absent parties non-inclusion in the case would prejudice that party's rights. Under Rule 19(b) the Court has discretion to dismiss an action on the grounds that a party is indispensable. Dismissal may be in the form of a summary judgment. *See, e.g., Malibu Media, LLC v. Fitzpatrick*, 2013 U.S. Dist. LEXIS 149495, at *22 (S.D. Fla. 2013). Here, the persons who sex trafficked Plaintiff of which there are many) and the other hotels where she was allegedly sex trafficked (which there are, again, many) are indispensable parties.

Plaintiff is proceeding under the TVPRA's "beneficiary" provision, which allows suit against anyone who "knowingly benefits, financially or by receiving anything of value from **participation** in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a) (emphasis added). Given the "participation" requirement,

---

[40] Varahi is aware of the existence of and the varying interpretations of O.C.G.A. § 9-3-99. Varahi is not aware, however, of any pronouncement from the Georgia appellate courts that this tolling provision operates when there was no criminal investigation, much less a prosecution. Indeed, the Middle District has read the Georgia Court of Appeals case of *Stopiano v. Leon's Fence & Guardrail, LLC*, 346 Ga. App. 18 (2018), to hold that "a crime victim is not entitled to sit on her hands while awaiting a criminal prosecution that may never occur." *Winston v. Walsh*, No. 5:19-cv-00070-TES, 2019 U.S. Dist. LEXIS 115823, at *15 (M.D. Ga. July 12, 2019); s*ee Stopiano v. Leon's Fence & Guardrail, LLC*, 346 Ga. App. 18, 21 (2018) ("By its plain language, the statute contemplates extending the time in which a victim may file a tort action where there are pending criminal charges arising out of the same facts or circumstances."). This seems to present an unsettled question of Georgia law and Varahi raises it here so as not to waive it.

Varahi's liability or not is so connected to the actions of the person who sex-trafficked Plaintiff that Varahi cannot be held liable unless the sex trafficker is also found to be liable. This makes the sex-trafficker an indispensable party.

As for the other hotels where Plaintiff was allegedly trafficked, Plaintiff may argue that courts have held joint tortfeasors are not indispensable parties. The TVPRA, however, is silent as to whether joint liability may be imposed on responsible nonparties. *See* 18 U.S.C. § 1595. The statute is likewise silent as to whether a liable defendant may seek contribution from a nonparty who contributed to cause the plaintiff's injury. *Id.* This is especially important because courts have repeatedly held that where no right to contribution is provided by federal statutory or common law, a party may not engraft a state law contribution claim upon the federal statutory scheme.[41]

---

[41] *See Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir. 1992) (denying third-party complaint for indemnity allowed under Fair Labor Standards Act, because engrafting such a claim onto a comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution and would undermine employers' incentives to abide by the FLSA.); *Mortgages, Inc. v. United States Dist. Court,* 934 F.2d 209, 214 (9th Cir. 1991) ("Because there is no basis in the [False Claims Act] or federal common law to provide a right to contribution or indemnity in a [False Claims Act] action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."); *Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir. 1984) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law."); *Environmental Conservation Org. v. Bagwell,* 2005 U.S. Dist. LEXIS 22027 (N.D. Tex. Sept. 30, 2005); *United States v. Domestic, Industries, Inc.,* 32 F. Supp. 2d 855, 872-73 (E.D. Va. 1999); *Lehman Bros., Inc. v. Wu,* 294 F. Supp. 2d 504, 505 n.1 (S.D.N.Y. 2003) ("whether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law.") (*quoting Johnston v. Smith,* 1997 U.S. Dist. LEXIS 20167 (N.D. Ga. 1997)); *Gilmore v. List & Clark Constr. Co.,* 866 F. Supp. 1310, 1312 (D. Kan. 1994) ("The Supreme Court made clear that where Congress has enacted a comprehensive legislative scheme that includes an integrated system of procedures, as with Title VII, courts should not fashion new remedies that might upset carefully considered legislative programs and that it would be improper for us to add a right to contribution to the statutory rights that Congress created.") (internal quotations omitted).

Finally, the statute is also silent as to the availability of a setoff for settlements between Plaintiff and responsible nonparties. For all these reasons, it is imperative that all parties responsible for Plaintiff's alleged injuries be present in this case and have their liability adjudicated alongside Varahi's. Due to the absence of those parties, the Court should grant summary judgment for Varahi. *See Malibu Media*, 2013 U.S. Dist. LEXIS 149495, at *22.

Further, without joinder of indispensable parties, Plaintiff's recovery is limited to those damages attributable only to Varahi. *See Oracle Am., Inc. v. Micron-Tech. Inc.*, 817 F. Supp. 2d 1128, 1136 (N.D. Cal. 2011) (without joint and several liability, defendant "would only be liable for the damages attributable to its own conduct."). A plaintiff must prove with reasonable certainty the degree to which his or her damages are attributable to the defendant. *Crs Sirrine v. Dravo Corp.*, 219 Ga. App. 301, 303 (1995). The jury must be given a reasonable basis for calculating the plaintiff's damages. *Scriver v. Lister*, 235 Ga. App. 487, 489 (1998). A trier-of-fact must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an allowance of loss is based on guesswork. *Tucker Nursing Ctr., Inc. v. Mosby*, 303 Ga. App. 80, 82-83 (2010); *see also Bennett v. M/V Keeley*, 2008 U.S. Dist. LEXIS 134018, at *24-25 (D.S.C. 2008) ("While proof, with mathematical certainty, of the amount of loss or damage is not required, for damages to be recoverable the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. Neither the existence,

causation nor amount of damages can be left to conjecture, guess or speculation.") (cleaned up).

It is undisputed Plaintiff claims she was sex trafficked at other hotels. It is also undisputed she claims to suffer from Post-Traumatic Stress Disorder. There is no evidence by which a jury could calculate the damages attributable solely to Varahi, as opposed to her traffickers and other hoteliers (of which there are so very many)[42] or Plaintiff's preexisting psychiatric conditions, without pure guesswork. Without a rational basis for apportioning damages among the various causes, which her own experts have explained they cannot or will not provide, Plaintiff cannot recover from Varahi. *See Tucker,* 303 Ga. App. at 82-83; *Bennett*, 2008 U.S. Dist. LEXIS 134018, at *24-25.

In sum, because the TVPRA is silent as to joint liability for responsible persons and a defendant's contribution rights against a responsible nonparty, Varahi is entitled to summary judgment on Plaintiff's TVPRA claims due to the inability to determine the amount of damages attributable solely to Varahi.

---

[42] This is particularly problematic here where Plaintiff details two, if true, horrific events that did not occur at the Smyrna Red Roof. As noted, she detailed her *Taken*-like introduction in the commercial sex world that involved, like *Taken*, kidnapping, forced administration of heroin and her sale to another man. Her story is worse than *Taken* in at least one regard, as she claims she was repeatedly raped at a hotel that was not the Smyrna Red Roof. Additionally, she told the story of a 6-hour-long beating, rape, sodomization, and genital mutilation that occurred at a LaQuinta Inn. The injuries and damages suffered in these ordeals and at these other hotels are not rightfully attributed to Varahi. Yet her own experts have not even tried to separate them out, instead claiming that they are unaware of a mechanism that they can employ to do so. But that is no excuse for not suing all parties responsible for her claimed damages. While it may be hard to differentiate, that is no explanation for not even trying and it certainly is no basis to try and hold Varahi liable and responsible for all of the damages that she supposedly suffered in her sordid life as a commercial sex worker. *See* W. Page Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 52, pp. 345 (5th ed. 1984) ("There will be obvious difficulties of proof as to the apportionment of certain elements of damages, such as physical and mental suffering and medical expenses, but such difficulties are not insuperable, and it is better to attempt some rough division than to hold one defendant for the wound inflicted by the other.").

*See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 974 (S.D. Ohio 2019) (joint and several liability not available under TVPRA).[43]

### 3. *Plaintiff cannot recover under the Georgia RICO statutes.*

The predicate acts alleged here are violations of the TVPRA[44] and the following acts in violation of state law: sexual servitude, false imprisonment, battery, keeping a place of prostitution, and pimping. As a matter of law, Plaintiff may not recover under the Georgia RICO statutes for the following reasons:

---

[43] Plaintiff will likely argue that Rule 19 does not require the presence of the other hotels and traffickers because the court the court can accord complete relief among the existing parties without joinder of the absentees. But that is simply not the case when one considers the damages to be awarded (if any). The calculation of the damages attributable to actions of Varahi when compared to all the other potential causes of her trafficking-related injuries/damages requires that one consider all pre-existing conditions and all concurrent causes of the complained-of damages, which her own experts cannot ferret out. Here without joint and several liability, as discussed above, it becomes incumbent on Plaintiff to prove what damages are attributable to Varahi.

The district court's analysis in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) is instructive. In that case, the defendants moved to dismiss the joint and several liability claim, and the plaintiff did not respond. The court, therefore, dismissed that claim. Since joint and several liability was no longer an issue, the court rebuffed the defendant's indispensable party argument as to a prior owner of the hotel where the plaintiff was allegedly trafficked. In denying that motion, the court referenced the lack of joint and several liability as a basis for the denial:

> This Court has already held that Plaintiff has conceded that joint and several liability is not appropriate, thus, with each Defendant potentially liable only for its own actions, Plaintiff will not be able to recover against Defendant First Hotel Management for any events that occurred while MGH owned the property. Failure to join MGH does not prevent this Court from determining liability as to the other parties. Therefore, this Court finds MGH is not a necessary party, and denies First Hotel Management's Motion to Dismiss on these grounds.

*Id.* at 974.

The same holds here. Since joint and several is not available, Plaintiff cannot recover for anything not related to Varahi. And that being the case, Plaintiff either failed to name all of the folks she needs to obtain complete relief, or she must prove the Varahi damages specifically. The first she did not do and the second she cannot do. In either event, summary judgment is proper on this claim.

[44] For all the reasons already explained, Plaintiff cannot rely on a violation of the TVPRA here.

***First,*** to recover under a RICO statute, the plaintiff must not have participated in the commission of the predicate act. *See Allum v. Valley Bank*, 849 P.2d 297 (Nev. 1993) (construing Nevada RICO statute). As the court in *Allum* put it, "We doubt that the legislature intended for one knowingly involved in an illegal scheme to be able to recover from the scheme's other participants." *Id.* at 283. The same may be said for the Georgia General Assembly and the Georgia RICO statute. It is undisputed that Plaintiff participated in the alleged predicate acts of prostitution and the related one of maintaining a place of prostitution by violating the Georgia statute outlawing prostitution, O.C.G.A. § 16-6-9. All of Plaintiff's claims stem from the commercial sex nature of the work she was performing at the hotel. Under Georgia law, all that commercial sex was illegal, and Plaintiff was a vital participant in it.[45] Thus, she herself was a participant in the acts that underlie all others and, as such, she cannot recover under any theory RICO theory.

***Second,*** to satisfy the proximate cause element of a Georgia RICO claim, a plaintiff must show that her injury "flowed directly" from a predicate act. *Narajian Capital, LLC v. Clark*, 357 Ga. App. 685, 694 (2020). "This burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the

---

[45] For this reason, her specific claim that Defendant kept a place of prostitution fails, as the prostitute that was supposedly being kept was her. Similarly, her pimping claim fails because, by her own testimony, her actions in violating the prostitution statute were what were being "pimped." All other predicate acts are similarly premised on her commercial sex activity, which was illegal when she committed it.

14

predicate act." *Id.*[46]

Thus, a plaintiff asserting a Georgia RICO claim "must allege more than that an act of racketeering occurred and that she was injured," and instead "must show that her injury was the direct result of a predicate act *targeted toward her*, such that she was the intended victim." *Wylie v. Denton*, 323 Ga. App. 161, 166 (2013) (emphasis added) (citations omitted). It is insufficient to allege only that an injury was a "reasonably foreseeable" result of a RICO violation. *Gentry v. Volkswagen of Am.*, 238 Ga. App. 785, 791 (1999).

Plaintiff, beyond being the so-called predicate act herself, has no evidence showing that she was an "intended victim" of alleged predicate acts that Varahi targeted at her. Thus, Plaintiff cannot, as a matter of law, recover under the Georgia RICO Act.

## CONCLUSION

The Court should render summary judgment for Defendant Varahi for the foregoing reasons.

Respectfully submitted this 20th day of January 2023.

*Signatures on following page*

---

[46] To the extent that Plaintiff seeks to rely upon the post-July 1, 2019 version of the sexual servitude statute, particularly its new beneficiary provision, O.C.G.A. § 16-5-46(c)(3), Defendant incorporates the retroactivity and *ex post facto* arguments set forth at length in the Motion for summary Judgment as to Jane Doe 2.

**HAWKINS PARNELL & YOUNG, LLP**

/s/ *C. Shane Keith*
Warner S. Fox
Georgia Bar No. 272654
wfox@hpylaw.com
C. Shane Keith
Georgia Bar No. 411317
skeith@hpylaw.com
Elliott C. Ream
Georgia Bar No. 528281
eream@hpylaw.com
Counsel for Defendant
Varahi Hotel, LLC

303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
(855) 889-4588 (facsimile)

## LR 7.1(D), N.D. GA. CERTIFICATE OF COMPLIANCE

I certify this brief was prepared with a font (Century Schoolbook) and point size (13) approved by the Court in LR 5.1C, NDGa.

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of January 2023, the foregoing **Defendant Varahi Hotel, LLC's Brief in Support of its Motion for Summary Judgment on the Claims of Plaintiff Jane Doe 1** was filed with the Clerk of Court using the EM/ECF system which will send e-mail notification to all counsel of record for this matter.

*/s/ C. Shane Keith*
C. Shane Keith
Georgia Bar. No. 411317