**In The Matter Of:**
*W.K., et al v.*
*Red Roof Inns, et al*

PL Sum. J.
Ex. ___015___

*Vanessa Cole*
*October 18, 2021*

*D'Amico & Associates, Inc.*
*Court Reporters & Videoconferencing*
*5855 Sandy Springs Circle #140, Atlanta, GA 30328*
*(770) 645-6111 or toll-free (888) 355-6111*



Min-U-Script® with Word Index

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P. and T.H., | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| vs. | ) ) | NO. 1:20-cv-5263-MHC |
| RED ROOF INNS, INC., FMW RRI NC, LLC, RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, VARAHI HOTEL, LLC, WESTMONT HOSPITALITY GROUP, INC., and RRI III, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| J.A., | ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| vs. | ) ) | NO. 1:21-cv-03655-TWT |
| RED ROOF INNS., INC., RED ROOF FRANCHISING, LLC and VARAHI HOTEL, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

VIDEOTAPED DEPOSITION OF VANESSA COLE

October 18, 2021

1

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                     ATLANTA DIVISION

 3
    JANE DOE 1, JANE DOE 2,     )
 4  JANE DOE 3 and JANE DOE 4,  )
                                )
 5              Plaintiffs,     )   CIVIL ACTION FILE
                                )
 6       vs.                    )   NO. 1:21-cv-04278-WMR
                                )
 7  WESTMONT HOSPITALITY        )
    GROUP, INC., RED ROOF INNS, )
 8  INC.; FMW RRI NC, LLC, RED  )
    ROOF FRANCHISING, LLC, RRI  )
 9  WEST MANAGEMENT, LLC and    )
    VARAHI HOTEL, LLC and RRI   )
10  III, LLC,                   )
                                )
11              Defendants.     )
    _____)
12  E.F.,                       )
                                )
13              Plaintiff,      )   CIVIL ACTION FILE
                                )
14       vs.                    )   NO. 1:20-CV-04373-SDG
                                )
15  RED ROOF INNS., INC., RED   )
    ROOF FRANCHISING, LLC, HJA  )
16  ENTERPRISES, INC., and SAI  )
    NATIONAL HOSPITALITY        )
17  VENTURES, LLC,              )
                                )
18              Defendants.     )
    _____)
19

20

21       VIDEOTAPED DEPOSITION OF VANESSA COLE

22                 October 22, 2021

23

24

25
                                                         2
```

```
 1
 2
 3
 4
 5
 6
 7              Videotaped deposition of VANESSA COLE,
 8    taken on behalf of the Plaintiffs, pursuant to the
 9    stipulations contained herein, signature being
10    reserved, in accordance with the Federal Rules of
11    Civil Procedure, before Kelly D'Amico, RPR, Certified
12    Court Reporter and Notary Public, at 1201 West
13    Peachtree Street, Suite 3900, Atlanta, Georgia, on the
14    18th day of October, 2021, commencing at 1:13 p.m.
15
16
17
18
19
20              D'AMICO & ASSOCIATES, INC.
21            Court Reporters & Videoconferencing
22            5855 Sandy Springs Circle, Suite 140
23                 Atlanta, Georgia   30328
24                     (770) 645-6111
25               www.DamicoAssociates.com
```

3

```
 1                   A P P E A R A N C E S

 2   On behalf of Plaintiffs W.K., E.H., M.M., R.P., M.B.,
     D.P., A.F., C.A., R.K., K.P. and T.H.; Plaintiff J.A.;
 3   Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane
     Doe 4; and Plaintiff E.F.:
 4

 5              PATRICK MCDONOUGH
                JONATHAN TONGE
 6              Attorneys at Law
                Andersen, Tate & Carr, P.C.
 7              1960 Satellite Boulevard
                Suite 4000
 8              Duluth, Georgia  30097
                T:  (770) 236-9751
 9              E:  pmcdonough@atclawfirm.com
                E:  jtonge@atclawfirm.com
10

11   On behalf of Plaintiffs W.K., E.H., M.M., R.P., M.B.,
     D.P., A.F., C.A., R.K., K.P. and T.H.; Plaintiffs Jane
12   Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4:

13
                MICHAEL ROSEN BAUMRIND (via videoconference)
14              JULIANA MESA (via videoconference)
                Attorneys at Law
15              Bondurant Mixson & Elmore, LLP
                1201 West Peachtree Street, NW
16              3900 One Atlantic Center
                Atlanta, Georgia  30309
17              T:  (404) 881-4100
                E:  baumrind@bmelaw.com
18              E:  mesa@bmelaw.com

19
     On behalf of Plaintiff J.A.:
20

21              DENISE D. HOYING
                Attorney at Law
22              Law & Moran
                563 Spring Street, NW
23              Atlanta, Georgia  30308
                T:  (404) 814-3700
24              E:  denise@lawmoran.com

25
                                                            7
```

```
 1              A P P E A R A N C E S (Continued)

 2


 3   On behalf of Plaintiff E.F. :

 4
                DAVID HOLMES BOUCHARD (via videoconference)
 5              Attorney at Law
                Finch McCranie, LLP
 6              225 Peachtree Street, NE
                Suite 1700, South Tower
 7              Atlanta, Georgia  30303
                T:  (404) 658-9070
 8              E:  david@finchmccranie.com

 9
     On behalf of Defendants Red Roof Inns, Inc., FMW RRI
10   NC, LLC, Red Roof Franchising, LLC, RRI West
     Management, LLC, RRI III, LLC, and Westmont
11   Hospitality Group, Inc.:

12
                ADMIR "ADI" ALLUSHI
13              CHARLES K. REED
                Attorneys at Law
14              Lewis Brisbois Bisgaard & Smith, LLP
                1180 Peachtree Street, N.E.
15              Suite 2900
                Atlanta, Georgia  30309
16              T:  (404) 348-8585
                E:  adi.allushi@lewisbrisbois.com
17              E:  chuck.reed@lewisbrisbois.com

18
     On behalf of Defendant Varahi Hotel, LLC; and
19   Defendant SAI National Hospitality Ventures, LLC:

20
                WARNER FOX
21              ELLIOTT REAM (via videoconference)
                Attorneys at Law
22              Hawkins Parnell & Young, LLP
                4000 SunTrust Plaza
23              303 Peachtree Street, N.E.
                Atlanta, Georgia  30308
24              T:  (404) 614-7400
                E:  wfox@hpylaw.com
25              E:  eream@hpylaw.com
```

8

```
 1              A P P E A R A N C E S (Continued)

 2


 3   On behalf of Defendant HJA Enterprises:

 4
             LEAH FOX PARKER (via videoconference)
 5           Attorney at Law
             Swift, Currie, McGhee & Hiers
 6           1355 Peachtree Street, N.E.
             Suite 300
 7           Atlanta, Georgia  30309-3238
             T:  (404) 874-8800
 8           E:  leah.parker@swiftcurrie.com

 9
     Videographer:
10

11           Eric Lucas

12
     Also present:
13

14           Alexis Digiorgio (via videoconference)
             Michael Weinstein (via videoconference)
15           Samantha Girschick (via videoconference)

16

17                        - - -

18

19

20

21

22

23

24

25
                                                           9
```

```
 1   can be in one room while someone is in another and
 2   there's activity going in and out of those rooms.
 3        Q     And did you observe what you believed to
 4   be sex trafficking at this hotel?
 5        A     Yes.
 6        Q     All right.  And please explain or
 7   describe what might have made you believe that was sex
 8   trafficking.
 9        A     We had one car that had about five people
10   in the back seat or in the car and the lady came in
11   and was rushing me to check her in and paid cash and
12   wanted to hurry up and kept looking back towards the
13   car.  And they were in -- they went into their room.
14   I called Cobb County Police Department.  They came out
15   and they determined that there was trafficking.
16        Q     All right.  And so based on, I think you
17   said, the large problem of crime and sex trafficking,
18   what was it that you tried to do?
19        A     Anytime I saw any kind of activity I
20   would always be around.  If I saw people hanging out
21   in cars loitering, I would approach the vehicle, and
22   that's how I found out Cobb County was watching the
23   hotel.  I would have my housekeeping, my front desk,
24   also the maintenance department looking out to see
25   what kind of activity was happening on the property.
```

25

```
 1       Q       And what was his position about revenue
 2   going down when you were trying to clean it up?
 3       A       He was -- well, his response was, yes, we
 4   understand we have to, you know, clean up the place,
 5   but we also need to sell rooms.
 6       Q       And did he prioritize one over the other,
 7   revenue over safety?
 8       A       In speaking with him, it seemed like he
 9   was prioritizing the revenue to meet budget.
10       Q       All right.  I want to go back and you had
11   indicated that you had also worked at the North Druid
12   Hills, Buckhead area.  I think that's 1960 North Druid
13   Hills, Atlanta, Georgia; is that correct?
14       A       Yes.
15       Q       And tell me, when did you work there?
16       A       I did some training there when I first
17   came in in 2009 and then I helped, you know, when a
18   general manager was absent or went on vacation in
19   between managers.
20       Q       And I think you said 2009.  How -- was it
21   just that year, was it multiple years, or how often
22   did you go back?
23       A       It was multiple years when I didn't have
24   to be out of state.  So in order -- for instance, if
25   there's not a hotel that needs a general manager at
```

27

1   the time, since I lived in Marietta, Georgia, they
2   would assign me to go help out at a different hotel.
3       Q       Okay.  And just ballpark how many times
4   do you think you worked at the North Druid Hills?
5       A       I maybe helped them, oh, off and on.
6   Total I -- probably like two months.
7       Q       Okay.  And what year span would that have
8   been?
9       A       That would have been 2009 during my time
10  at the Smyrna property between 2011 and 2012.  After
11  that I went to the Kennesaw property in 2000- -- late
12  2012, 2013.  So I would drive to the Druid Hills
13  location.
14      Q       And what was your duties or
15  responsibilities when you were there?
16      A       Room inspections, making sure the
17  housekeepers get what they had -- or what they needed,
18  making sure that the front desk is adhering to
19  policies and procedures.
20      Q       So you were a general manager there too
21  as well?
22      A       Right.
23      Q       Just for short periods of time?
24      A       Right.
25      Q       And did they have cameras there?

28

```
 1      A      I would send it to -- Christine Taylor is
 2   her last name.
 3      Q      Okay.
 4      A      And -- Christine Taylor and copy Jay
 5   Moyer because Jay Moyer wanted to be copied on
 6   everything we send.
 7      Q      For both this one and the Smyrna?
 8      A      Yes.
 9      Q      Did this property have a security
10   company?
11      A      It did, but I'm not sure if it kept going
12   the entire time.
13      Q      Okay.  And what was your general
14   impression or paint a picture of what crime was like
15   when you were there at this hotel?
16      A      There was at least one incident each week
17   that I was there.  And when I say an incident, it's,
18   you know, somebody was in a fight, somebody was
19   arrested, somebody was -- created damage, somebody
20   stole something, you know, took furniture, whatnot.
21      Q      And did you observe prostitution at this
22   hotel?
23      A      Yes.
24      Q      And again, would you consider this a
25   small or a large problem?
```

30

1  A          It was pretty consistent there.  I mean,
2  we had one that was arrested and they left the gun
3  behind, so I had to get the gun and turn it in to
4  DeKalb County Police Department.
5      Q      And how about signs of sex trafficking at
6  this hotel?
7      A      I can't confirm that it was sex
8  trafficking, but you see the signs.
9      Q      Okay.  And again, did you -- when you
10 were there did you try to do things to curtail it?
11     A      Yes.
12     Q      And how was that met by corporate?
13     A      I never really got a response since I
14 wasn't their direct general manager.  So therefore, I
15 never got a response to anything that I did.
16     Q      And when did you leave Red Roof?
17     A      January 25th of 2016.
18     Q      And why did you leave?
19     A      I got to the point where I had to travel
20 three weeks on.  I was only able to come home five
21 days a week.  So if my time ended on -- for instance,
22 if -- you know, I couldn't come home for Thanksgiving
23 because I had to be out for three weeks or I couldn't
24 come home for Christmas because I was out for three
25 weeks.  And it was one that I was always having to

31

1    would talk to me if something happened, you know, from
2    that review, for instance, somebody complained.  He
3    would follow up on that.  But I was the one that was
4    responsible for responding back to them and he would
5    see the response.
6        Q     Okay.  And was there a matrix or anything
7    that kind of collated these reviews?
8        A     Yes.  We had rankings.  So part of the
9    rankings were your reviews, your surveys, your
10   reven- -- your RevPAR.  It was also with other matrix,
11   for instance, if you were short or if you had to give
12   refunds back to people.  So refunds counted against
13   you if you ever had to give a refund back to people.
14   A report came out every month, I believe, with any
15   refunds that you may have given back to people and
16   telling you why you -- you had to explain why you gave
17   a refund back.
18       Q     Okay.  And you mentioned prostitution was
19   a large problem at this hotel.  So as a general
20   manager, I mean, you witnessed prostitution and you
21   had prostitutes arrested?
22       A     Yes.
23       Q     All right.  And when that was done, then
24   you then reported that information up the chain to Red
25   Roof corporate?

36

```
 1      A      Yes.
 2      Q      Jay Moyer and others?
 3      A      Yes.
 4      Q      Okay.  And you talked about sex
 5   trafficking at this hotel so I just want to go back
 6   and make sure I understand.  Traffic can be kind of a
 7   general term.
 8             When you said you saw high traffic, were
 9   you saying you saw a lot of men going in and out of
10   one room like repeatedly as one of the signs of sex
11   trafficking you saw?
12      A      Yes.  I have also seen girls, for
13   instance, being dropped off in a taxi or, you know,
14   they came in from the Greyhound from other areas and
15   were checked into a room.
16      Q      And were these young girls or --
17      A      Yes, they were all young girls.
18      Q      Like?
19      A      They were maybe 16, 17, 18 years old.
20      Q      Who were checking these minors into the
21   hotel?
22      A      Yeah, they always had an adult with them,
23   one single adult.
24      Q      All right.  And why did you think --
25   instead of it being like a parent, why would you think
```

1  that might have been sex trafficking?
2      A       Because they were not allowed to speak to
3  us.  They were not allowed to look at us or engage
4  with us.  So it was one of those things that even the
5  person that was checking them in wasn't looking at
6  them.  A lot of them -- I'd say the majority of them,
7  I can't say 100 percent, but they all paid cash.
8      Q       And were there other signs?  Like did
9  they request lots of towels for those rooms --
10     A       Yes.
11     Q       -- with high traffic?
12             And cleaning people, they'd find condoms
13 and other --
14             MR. ALLUSHI:  Objection, leading.
15 BY MR. McDONOUGH:
16     Q       What other signs of sex trafficking did
17 you see at the hotel?
18     A       We saw costumes, we saw wigs, we saw a
19 lot of condom packages, we saw candles burning, we saw
20 changing of the lightbulbs for a different color, we
21 saw things hanging from the lamps.  You know, there's
22 different signs that they, you know, hang.  I'm not
23 sure.  It's not a scarf or something but something
24 over the lamps.  So sometimes there's incense burning.
25 And then you see the dirty linen afterwards.  They

38

1  always request linen changes or extra linen for their
2  rooms.
3         Q      And did you observe what you considered
4  to be the pimps along with these minors?
5         A      Yes.
6         Q      And just how would you describe that or
7  why did you think they were pimps?
8         A      For the most part, you know, it was one
9  individual and it could be somebody else waiting in a
10 vehicle for them and then they were directed, the car,
11 where to go with these people following behind them.
12 Sometimes they didn't want to talk so they had
13 somebody do the talking for them.  It was -- they were
14 keeping a low profile.
15                But again, sometimes they had two rooms
16 or, you know, one would stay in one room, the others
17 would stay in the other room and that had a lot of
18 activity, or they would rent out one room but the
19 person stayed out in the car.
20        Q      And I just want to understand.  When you
21 say a lot of activity, that's adult men going in and
22 out of the rooms like in short order?
23        A      Yes.
24        Q      Okay.  And I think we talked about it
25 earlier, but I just want to make sure I understand.

39

```
 1                  C E R T I F I C A T E

 2

 3              I hereby certify that the foregoing
    transcript was reported, as stated in the caption;
 4  that the witness was duly sworn and elected to waive
    signature in this matter; that the colloquies,
 5  questions and answers were reduced to writing under my
    direction; and that the foregoing pages 1 through 161
 6  represent a true, correct, and complete record of the
    evidence given.
 7
                I further certify that I am not
 8  disqualified for a relationship of interest under
    O.C.G.A. 9-11-28(c); that I am a Georgia Certified
 9  Court Reporter here as a representative of D'Amico &
    Associates; that I/D'Amico & Associates was contacted
10  by the party taking the deposition to provide court
    reporting services for this deposition; that I will
11  not be taking this deposition under any contract that
    is prohibited by O.C.G.A. 15-14-37(a) and (b) or
12  Article 10.B of the Rules and Regulations of the
    Board; and by the attached disclosure forms I confirm
13  that I/D'Amico & Associates is not a party to a
    contract prohibited by O.C.G.A. 15-14-37 (a) or (b).
14
                The above certification is expressly
15  withdrawn and denied upon the disassembly or
    photocopying of the foregoing transcript, unless said
16  disassembly or photocopying is done under the auspices
    of D'Amico & Associates and the signature and original
17  seal is attached thereto.

18              This, the 5th day of November, 2021.

19

20

21

22  _____
    KELLY D'AMICO, RPR, CCR-B-1322
23

24

25
                                                      162
```