**PL Sum. J.**

**Ex. 018**



# Transcript of **James Moyer**

Friday, March 18, 2022

*W.K. v. Red Roof Inns, Inc*

www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO (800.367.3376)
Scheduling@Trustpoint.One

Reference Number: 113730

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4        W.K., E.H., M.M., R.P.,         )
          M.B., D.P., A.F., C.A.,         )
 5        R.K., K.P., and T.H.,           )
                                          )
 6                  Plaintiffs,           )
                                          )
 7        vs.                             ) CIVIL ACTION FILE
                                          ) 1:20-cv-5263-MHC
 8        RED ROOF INNS, INC., FMW        )
          RRI NC, LLC; RED ROOF           )
 9        FRANCHISING, LLC; RRI WEST      )
          MANAGEMENT, LLC; VARAHI         )
10        HOTEL, LLC; WESTMONT            )
          HOSPITALITY GROUP, INC.;        )
11        and RRI III, LLC,               )
                                          )
12                  Defendants.           )
          _____)
13                                        )
          JANE DOE 1-4,                   )
14                                        )
                    Plaintiffs,           )
15                                        )
          vs.                             ) CIVIL ACTION FILE
16                                        ) 1:21-cv-04278-WMR
          RED ROOF INNS, INC., et         )
17        al.,                            )
                                          )
18                  Defendants.           )
          _____)
19

20

21        VIDEOTAPED DEPOSITION OF:
          JAMES MOYER
22        Taken on behalf of the Plaintiffs
          March 18, 2022
23

24

25
```

```
 1      APPEARANCES:

 2      For the Plaintiffs:

 3           DENISE HOYING, ESQ.
             Law & Moran
 4           563 Spring Street, NW
             Atlanta, Georgia 30308
 5           404.814.3700
             Denise@LawLoran.com
 6
             AMANDA KAY SEALS, ESQ.
 7           TIANA MYKKELTVEDT, ESQ. (Via Zoom)
             JULIANA MESA, ESQ. (Via Zoom)
 8           Bondurant, Mixson & Elmore, LLP
             One Atlantic Center
 9           1201 West Peachtree Street, NW
             Suite 3900
10           Atlanta, Georgia 30309
             404.881.4174
11           Seals@bmelaw.com

12           PATRICK McDONOUGH, ESQ.
             JONATHAN S. TONGE, ESQ.
13           Andersen, Tate & Carr
             One Sugarloaf Center
14           1960 Satellite Boulevard, Suite 4000
             Duluth, Georgia 30097
15           770.822.0900
             Pmcdonough@actlawfirm.com
16           Jtonge@atclawfirm.com
             (Via Zoom)
17
        For the Defendants:
18
             ADI ALLUSHI, ESQ.
19           CHRISTIAN NOVAY, ESQ.
             Lewis Brisbois
20           600 Peachtree Street, NE
             Suite 4700
21           Atlanta, Georgia 30308
             404.348.8585
22           Adi.Allushi@lewisbrisbois.com
             Christian.Novay@lewisbrisbois.com
23

24

25
```

James Moyer     3/18/2022
Case 1:21-cv-04278-WMR   Document 174-18   Filed 03/02/23   Page 4 of 17
Page 3

```
 1      For the Defendant Old National:

 2          LEAH PARKER, ESQ.
            Swift, Currie, McGhee & Hiers, LLP
 3          1355 Peachtree Street, NE
            Suite 300
 4          Atlanta, Georgia 30309
            470.639.4858
 5          Leah.parker@swiftcurrie.com

 6      For the Defendant Varahi:

 7          C. SHANE KEITH, ESQ.
            ELLIOTT C. REAM, ESQ. (Via Zoom)
 8          Hawkins, Parnell & Young, LLP
            303 Peachtree Street, NE
 9          Suite 4000
            Atlanta, Georgia 30308
10          404.614.7400
            Skeith@hpylaw.com
11          Eream@hpylaw.com

12      Also Present:

13          Julia Winchester - Videographer

14

15

16

17

18

19

20

21

22

23

24

25
```

Trustpoint.One | Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

 1                The videotaped deposition of
 2      JAMES MOYER was taken by counsel for the
 3      Plaintiffs, on March 18, 2022,
 4      commencing at 9:13 a.m., in the Regus
 5      offices at 3102 West End Avenue, Suite
 6      400, Nashville, Tennessee, for all
 7      purposes under the Federal Rules of
 8      Procedure.
 9                The formalities as to notice,
10      caption, certificate, et cetera, are not
11      waived.  All objections, except as to
12      the form of the questions, are reserved
13      to the hearing.
14                It is agreed that Carissa L.
15      Boone, being a Notary Public and Court
16      Reporter, may swear the witness, and
17      that the reading and signing of the
18      completed deposition by the witness are
19      not waived.
20
21
22                    *    *    *
23
24
25

```
 1     of Georgia?
 2             A.      I had all of Georgia.
 3             Q.      Okay.  So, for example, the --
 4     one of the hotels in this case is the Red Roof
 5     Inn -- I'm going to call it the Red Roof Smyrna.
 6             A.      Okay.
 7             Q.      If I call it that, do you know
 8     which hotel I'm talking about?
 9             A.      Yes, I do.
10             Q.      Okay.  That hotel, I believe, was
11     sold and became a franchise approximately December
12     of 2012.  Sound about right to you?
13             A.      2012 sounds right.
14             Q.      Okay.  Up until it was sold, the
15     Red Roof Inn in Smyrna became a franchise in
16     approximately December of 2012, that hotel was
17     under your umbrella from 2001 up until 2012?
18             A.      To the best of my recollection.
19             Q.      Got it.
20                     One of the other hotels in this
21     case is the Red Roof Inn -- and I don't know how
22     you want me to refer to it.  I've seen it as Red
23     Roof Inn North Druid Hills.  I've seen it as Red
24     Roof in Buckhead.
25             A.      Okay.
```

```
1    from a revenue standpoint, but he's not doing
2    great from a quality standpoint as of this review?
3              A.   Yes.
4              Q.   All right.  The next box says --
5    at the very last line, ███████████████████████ ,
6    ████████    █████████████████████████████████
7    ████████████████████████████████████████████████
8    ████████
9                   And you sort of alluded to that
10   with me earlier, that this hotel became a PLUS+
11   property.  Tell me what that means.
12             A.   Well, so, first of all, a PLUS+
13   location is where they provide different amenities
14   in the room.  So it could be from bath towels to
15   providing a snack box in the room to having, you
16   know, wood-like flooring.  You know, just those
17   type of improvements in the room.
18                  And this was a property that I
19   wasn't an advocate to be a PLUS+ property, and so
20   I -- you know, I want it -- because it wasn't my
21   choice, I wanted to make sure it was successful.
22             Q.   Whose choice was it?  Was it the
23   investors?
24             A.   It was above -- I mean, it was
25   above me.  So I would just say the executive
```

Trustpoint.One Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1    for Return Intent, he ranked 109th out of 127
 2    properties?
 3            A.    Correct.
 4            Q.    All right.  ████████████████
 5    ████████████████████████████████████████
 6    improvement for a PLUS+ property."
 7                  Do you see that?
 8            A.    Yep.
 9            Q.    All right.  So you were concerned
10    that financially, the return on investment when it
11    became a PLUS+ property wouldn't be there, but
12    he's also not meeting -- or he is, in fact, not
13    meeting the quality standards for a PL- -- PLUS+
14    property, fair?
15            A.    I was concerned that when it
16    became a PLUS+ property, that we would have a
17    challenging time meeting the company expectations
18    from a performance standpoint, whether that be
19    quality or financial.
20            Q.    Okay.  And, again, for quality,
21    that in fact played out.  At least in 2016, he was
22    not meeting -- three Quality measures didn't meet
23    the standards for a PLUS+ property.
24            A.    Okay.
25            Q.    All right.  All right.  Let's pop
```

1            Q.    What else could it be?  I'm
2      trying to understand what you mean by "challenging
3      property."
4            A.    I mean, typically, it's the
5      employment's perspective, but sometimes it could
6      be dealing with local clientele or transient
7      clientele versus business clientele.
8            Q.    All right.  And tell me what --
9      and you used those phrases before.  Business
10     clientele, you defined something as like sales
11     guys, business --
12           A.    Yeah.
13           Q.    -- professionals who were
14     traveling for business?
15           A.    That would be accurate.
16           Q.    Tell me what transient clientele
17     is.
18           A.    People that are just going from
19     one place to another.  Not necessarily there for
20     business.  I don't know what they're there for.
21     Just going from one place to another.
22           Q.    Okay.  Is that transient
23     clientele, is that anybody outside of business
24     clientele?
25           A.    I mean, it could be.  I would say

Trustpoint.One  Alderson.    www.trustpoint.one
www.aldersonreporting.com    800.FOR.DEPO
(800.367.3376)

1    of human trafficking?  It can be sex trafficking
2    in which a commercial sex act -- sex act is
3    induced by force, fraud or coercion, or it can be
4    sex trafficking in which the person induced to
5    perform such act is younger than 18.
6         A.    True.
7         Q.    All right.  And you and your
8    properties that reported up to you, both Buckhead
9    and the employees at Buckhead and Smyrna, knew
10   that as early as 2012 because it was posted in the
11   break room, right?
12               MR. ALLUSHI:  Objection.
13               THE WITNESS:  As far as this
14         specific training?
15   BY MS. HOYING:
16        Q.    Yeah.
17        A.    Yes.
18        Q.    All right.  And it talks about
19   common trafficking indicators there on the left?
20        A.    Okay.
21        Q.    You're familiar with those,
22   right?
23        A.    I am familiar with those type of
24   things to look for.  Or things that identify being
25   common trafficking indicators.

```
 1    AME or RME allocations.  I did not want them to
 2    mention any TV programming increases, WiFi
 3    increases.  I didn't want to talk about Next Gen
 4    product, in addition to what you're stating I
 5    didn't want to mention.
 6              Q.    Right.  Fair enough.
 7                    I'll hand you what I've just
 8    marked as Exhibit 115, which is an e-mail sent
 9    later this same day.
10                    (Exhibit 115 was marked.)
11                    MS. HOYING:  The Bates-stamp on
12              this is RRI_WK 4955.
13    BY MS. HOYING:
14              Q.    Mr. Moyer, have you seen this
15    e-mail before?
16              A.    I vaguely recall it.
17              Q.    Did you review this e-mail in
18    preparation for your deposition today?
19              A.    I did see it.
20              Q.    Okay.  So you saw it.  Did you
21    see it yesterday?
22              A.    Yes.
23              Q.    All right.  Who is Mike Murphy?
24              A.    A peer.  Somebody who's in the
25    same position as me.
```

```
 1                  that.  I can tell you typically when I
 2                  put something in quotation marks, it's
 3                  because I'm using somebody else's words.
 4                  So when I put:  "Well, Mr. Moyer, can
 5                  you tell me why your total utilities are
 6                  up 10,000 in the trailing 12 months,"
 7                  that would have been where somebody on
 8                  that call during that budget review
 9                  would have said that.
10      BY MS. HOYING:
11              Q.    Sure.
12              A.    And so this one here where:
13      "Well, Mr. Moyer, what can you tell me about
14      taking the Buckhead location PLUS+ status," again,
15      that's where I would have been frustrated because
16      the property went to a PLUS+ location.  And from
17      me having in quotations that statement, I can only
18      tell you that I can think that that came from a
19      review.  It wasn't necessarily something that I
20      personally said.
21              Q.    Well, you said:  "I'm going to
22      say that my pimps and hoes love them some snacks."
23              A.    And, again, because this is so
24      long ago, I don't recall if that was me saying
25      that or if that was anybody else that said that.
```

```
 1    we had to provide Cheryl an Action Plan on how to
 2    improve our overall Quality and Service results.
 3           Q.    Gotcha.
 4           A.    ████████████████████████████
 5    ████████████████   ████████████████████████
 6    ████████████████████████████████████████
 7    ████████████████████████████████████  ██
 8    ████████████████████████████████████
 9    ████████████████████████████████████
10    ████████████████████████████████████
11    ████████████████
12                 But, again, even though I might
13    stay away -- stay at one property more so than the
14    other, if there was a need to stay at that
15    property, then I would stay at it.  So I still
16    stayed at all the locations, but something like
17    this is why I might stay at another location
18    versus -- I mean, I still would do the property
19    visit, but I may not stay there, if that makes any
20    sense.
21           Q.    Right.
22           A.    Okay.
23           Q.    You may stay at Kennesaw and then
24    visit the Smyrna location --
25           A.    Absolutely.
```

Trustpoint.One Alderson.    www.trustpoint.one
www.aldersonreporting.com    800.FOR.DEPO
(800.367.3376)

1            Q.    -- because they had roach
2    problems?
3            A.    Yeah.  Bug-related issues, yeah.
4    Or cleanliness.  I'm a germaphobe, so I....
5            Q.    Where did you stay for the most
6    part when you visited Smyrna, Kennesaw?
7                  MR. ALLUSHI:  Objection.
8                  THE WITNESS:  I don't re- -- all
9            I can recall is that I stayed at the
10           various hotels.  I stayed at all of
11           them.  Would I stay at Kennesaw
12           sometimes more so?  It depended on my
13           visitations that I was going to conduct
14           that week so that I could be -- as you
15           know, Atlanta has a lot of bad traffic
16           and time-consuming.  So you might stay
17           at another location just to be able to
18           be more effective and efficient to get
19           your visits in.
20   BY MS. HOYING:
21           Q.    All right.  And I guess my -- I
22   appreciate that.
23                 My question was:  Did -- the
24   majority of the time when you visited Smyrna, were
25   you actually staying at the Kennesaw location?

```
 1                    MR. ALLUSHI:  Objection.
 2                    THE WITNESS:  I don't recall.
 3      BY MS. HOYING:
 4              Q.    And on the second page, you see
 5      Inn 130.  That's Buckhead, right?
 6              A.    It is.
 7              Q.    All right.  And it talks about
 8      their NR and their CSs of 75.  And then the
 9      complaints there are prostitutes and dog waste?
10              A.    That's according to Karesma
11      Hendrix.
12              Q.    Right.  Yeah.  According to a
13      customer --
14              A.    Yeah.
15              Q.    -- right?
16                    And same thing, mattress pad and
17      cleanliness, some reservation disputes and some
18      service issues?
19              A.    Okay.
20              Q.    Fair?
21              A.    Sure.  That's what's noted.
22              Q.    All right.  Did you also -- would
23      you stay away from the Buckhead location because
24      of cleanliness issues?
25              A.    There might be times that I would
```

Trustpoint.One | Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1      Q.    Are there reasons other than
2   cleanliness and traffic?
3      A.    Those were the two primary.
4      Q.    All right.  Okay.  I'm going to
5   hand you what's Exhibit 117.
6             (Exhibit 117 was marked.)
7             MS. HOYING:  This is Bates RRI_WK
8        8473 -- well, I guess they're out of
9        order.  I did them in -- I did them in
10       timestamp order.  8- -- I'm sorry.
11       RRI_WK 4871 to 4873.
12            THE WITNESS:  Okay.
13   BY MS. HOYING:
14      Q.    Mr. Moyer, did you review this
15   e-mail in preparation for your deposition?
16      A.    I have seen this document, yes.
17      Q.    Did you see it yesterday?
18      A.    Yes.
19      Q.    All right.  Who is Daniel at the
20   Buckhead location who is sending you an e-mail?
21      A.    Daniel is a floating General
22   Manager that I referenced earlier.  So he was
23   overseeing this location during a manager
24   transition.  And if you saw on that last document,
25   it did say for Buckhead, it said:  "Location

Trustpoint.One Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1                REPORTER'S CERTIFICATE

 2                I certify that the witness in the

 3   foregoing deposition, JAMES MOYER, was by me duly

 4   sworn to testify in the within entitled cause;

 5   that the said deposition was taken at the time

 6   and place therein named; that the testimony of

 7   said witness was reported by me, a Shorthand

 8   Reporter and Notary Public of the State of

 9   Tennessee authorized to administer oaths and

10   affirmations, and said testimony, Pages 9 through

11   346 thereafter transcribed into typewriting.

12             I further certify that I am not of counsel

13   or attorney for either or any of the parties to

14   said deposition, nor in any way interested in the

15   outcome of the cause named in said deposition.

16             IN WITNESS WHEREOF, I have hereunto set my

17   hand this 1st day of April 2022.

18

19

20

21

22

23                    [signature: Carissa L. Boone]

24             _____
               Carissa L. Boone, LCR No. 382
25             My License Expires: 6/30/2022
```