PL Sum. J.

Ex. ___026___



Transcript of **Gregory E. Stocker 30(b)(6)**

Wednesday, May 11, 2022

*W.K. v. Red Roof Inns, Inc*

www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO (800.367.3376)
Scheduling@Trustpoint.One

Reference Number: 116588

1            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
2                    ATLANTA DIVISION

3                        - - -

4    W.K., E.H., M.M., R.P.,      :
     M.B., D.P., A.F., C.A.,      :
5    R.K., AND K.P.,              :
                                  :
6        Plaintiffs,              :
                                  :
7        vs.                      :  Case No.
                                  :  1:20-CV-05263-MHC
8    RED ROOF INNS, INC.;         :
     FMW RRI NC, LLC; RED ROOF    :
9    FRANCHISING, LLC; RRI WEST   :
     MANAGEMENT, LLC; VARAHI      :
10   HOTEL, LLC; WESTMONT         :
     HOSPITALITY GROUP, INC.;     :
11   AND RRI III, LLC,            :
                                  :
12       Defendants.              :

13

14                       - - -

15    VIDEOTAPED 30(b)(6) DEPOSITION OF GREGORY E. STOCKER

16                       - - -

17
                            May 11, 2022
18                          1:01 p.m.
                            BAILEY CAVALIERI
19                          10 West Broad Street
                            Suite 2100
20                          Columbus, OH 43215

21                       - - -

22           Reported by:  Tracy J. Schell

23                       - - -

24

25

```
 1                     APPEARANCES

 2   ON BEHALF OF THE PLAINTIFFS:

 3        Manoj "Sachin" Varghese
          Amanda Kay Seals
 4        Tiana S. Mykkeltvedt (Via Zoom)
          BONDURANT MIXSON & ELMORE LLP
 5        One Atlantic Center
          1201 West Peachtree Street NW
 6        Suite 3900
          Atlanta, GA 30309
 7        varghese@bmelaw.com
          seals@bmelaw.com
 8        mykkeltvedt@bmelaw.com
          404.881.4174
 9

10   ON BEHALF OF PLAINTIFFS:  (Via Zoom)

11        Jonathan S. Tonge
          Anderson Tate Carr, P.C.
12        One Sugarloaf Centre
          1960 Satellite Boulevard
13        Suite 4000
          Duluth, GA 30097
14        jtonge@atclawfirm.com
          770.822.0900
15
     ON BEHALF OF THE DEFENDANTS RED ROOF INNS, INC.; FMW
16   RRI NC, LLC; RED ROOF FRANCHISING, LLC; RRI WEST
     MANAGEMENT, LLC; WESTMONT HOSPITALITY GROUP, INC., AND
17   RRI III, LLC:

18        Adi Allushi
          LEWIS BRISBOIS
19        600 Peachtree Street NE
          Suite 4700
20        Atlanta, GA 30308
          adi.allushi@lewisbrisbois.com
21        404.991.2173

22

23

24

25
```

```
 1                    APPEARANCES (CONTINUED)

 2    ON BEHALF OF THE DEFENDANT VARAHI HOTEL, LLC:

 3         C. Shane Keith
           HAWKINS PARNELL & YOUNG, LLP
 4         303 Peachtree Street, NE
           Suite 4000
 5         Atlanta, GA 30308
           skeith@hpylaw.com
 6         404.614.7464

 7

 8    ALSO PRESENT:

 9         Bruce Sandy, Videographer
           Christian Novay, Esq.
10

11                              - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Red Roof's knowledge on topic 8 for -- beginning in

2    2008; is that correct?

3              MR. ALLUSHI:  Objection.

4         A.   Correct.

5         Q.   How long was this December 2010 manual in

6    effect after December 2010?

7         A.   I believe it was in effect --

8              MR. ALLUSHI:  I'm going to object to that.

9    Outside the scope of the topics.

10        Q.   You can answer.

11        A.   I believe it was -- it's -- it was in effect

12   until -- until we became a hundred percent franchised

13   organization.

14        Q.   And when was that?

15        A.   I can't give the specific date, but it was in

16   the last year and a half, two years.

17        Q.   Another red flag for prostitution is signs of

18   physical abuse, correct?

19        A.   Correct.

20        Q.   And when did --

21        A.   Could be.

22        Q.   And when did Red Roof first become aware that

23   that was a red flag of prostitution?

24        A.   I don't know.

25        Q.   Another red flag for prostitution are

1    scantily clad individuals, correct?

2          A.    Could be, correct.

3          Q.    And when did Red Roof first became aware that

4    that was a red flag for prostitution?

5          A.    I don't know.

6          Q.    Another red flag for prostitution is a guest

7    requesting a secluded room, correct?

8          A.    Could be, correct.

9          Q.    And when did Red Roof first become aware that

10   that was a red flag for prostitution?

11         A.    I don't know.

12         Q.    Did Red Roof know in 2010 that that was a red

13   flag for prostitution?

14         A.    Yes.

15         Q.    Did they know in 2008?

16         A.    I don't know.

17         Q.    Did they know in 2009?

18         A.    I don't know.

19         Q.    Red Roof knows that another red flag for

20   prostitution is a refusal of housekeeping services,

21   correct?

22         A.    Could be one of, yes.

23         Q.    And when did Red Roof first become aware of

24   that red flag of prostitution?

25                MR. ALLUSHI:   Objection.

1       A.   I don't know.

2       Q.   Red Roof knows that a red flag for sex

3  trafficking is multiple individuals going in and out of

4  a room for a short period of time, correct?

5       A.   Could you repeat that question --

6       Q.   Sure.

7       A.   -- please?

8       Q.   Red Roof knows that a red flag for sex

9  trafficking is multiple individuals going in and out of

10  a room for short periods of time?

11      A.   Could be one of the red flags.

12      Q.   And when did Red Roof first learn that that

13  was a red flag for sex trafficking?

14      A.   I don't know specifically.

15      Q.   Did they know that in 2010?

16      A.   Yes.

17      Q.   And Red Roof knows that signs of physical

18  abuse are a red flag for sex trafficking, correct?

19      A.   Yes.

20      Q.   And when did it first learn that?

21      A.   I don't know.

22      Q.   Did it know that in 2010?

23      A.   Yes.

24      Q.   Did it know that in 2009?

25      A.   I don't know.

1       Q.   Red Roof knows that scantily clad individuals

2   is a red flag for sex trafficking, correct?

3       A.   It could be.

4       Q.   And when did Red Roof first know that?

5       A.   I don't know.

6       Q.   Did it know in 2010?

7       A.   Yes.

8       Q.   Red Roof knows that the presence of a large

9   number of condoms is a red flag of potential sex

10  trafficking, correct?

11      A.   Could be.

12      Q.   And when did Red Roof first learn that?

13      A.   I don't know.

14      Q.   Did they know in 2010?

15      A.   Yes.

16           MR. ALLUSHI:   Objection.

17           THE WITNESS:   May I take a break, please?

18           MR. VARGHESE:   That's fine.

19           MR. NOVAY:   Is there a question pending?

20           THE VIDEOGRAPHER:   The time is 1:51 p.m.

21  We're going off the record.

22                     (Recess taken.)

23           THE VIDEOGRAPHER:   The time is 1:57 p.m.

24  We're back on the record.

25  BY MR. VARGHESE:

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1          So for you to state to the witness that he's

2    not prepared is a inappropriate, I think, question.

3    BY MR. VARGHESE:

4        Q.   Mr. Stocker, as the corporate representative

5    for these Red Roof entities, the only location you can

6    identify that was subject to a nuisance or abatement

7    action is the Smyrna, Georgia, location, correct?

8        A.   As of 6:03 right now without documentation in

9    front of me to validate the actual location, yes,

10   that's my testimony.

11       Q.   Are you aware of a nuiance or abatement

12   action related to any properties in Gwinnett County,

13   Georgia?

14       A.   Yes, I am.

15       Q.   And which property was that?

16       A.   Actually, there were several.  Again, not

17   all-inclusive, I don't have them memorized off the top

18   of my head, but I can tell you one of them was

19   Norcross, property 166.

20       Q.   Any others?

21       A.   I believe Suwanee, possibly, Georgia.  There

22   was a Hometown Studio -- Studios.  I don't recall the

23   specific location, but it was in Atlanta.

24          And just for the record, these were all in

25   attendance for one meeting at the same time.

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1  two different communications.  You know, the original

2  one in 2017, primarily what their main focus was and

3  reason for the notice versus the one in -- later on in

4  the year in 2017.  It's hard to compare apples to

5  apples.  One could have been different from the next.

6          So to answer your question, it's -- it's

7  difficult to determine if it didn't get better.

8      Q.   Cobb County Police continued to have concerns

9  about this property in August of 2017, correct?

10      A.   It appears from this communication, yes.

11      Q.   And we've previously used this document, and

12  it's 179, so I'm going to change that on the face of

13  the document if you don't mind.

14      A.   Whoops.  Sorry.

15          MR. ALLUSHI:  What was the previous number?

16          MS. SEALS:  179.

17  BY MR. VARGHESE:

18      Q.   And this email from Major Adcock attaches

19  several documents to this email, correct?

20      A.   Yes.

21      Q.   And the email refers to a 12:30 conference

22  call, correct?

23      A.   Yes.

24      Q.   And did you participate in a conference call

25  related to this property with Major Adcock?

219

1                          CERTIFICATE

2    STATE OF OHIO:
                                 SS:
3    COUNTY OF DELAWARE:

4            I, Tracy J. Schell, a Notary Public in and
     for the State of Ohio, duly commissioned and qualified,
5    do hereby certify that the within-named GREGORY E.
     STOCKER was first duly sworn to testify to the truth,
6    the whole truth, and nothing but the truth in the cause
     aforesaid; that the testimony then given was reduced to
7    stenotypy in the presence of said witness, afterwards
     transcribed; that the foregoing is a true and correct
8    transcript of the testimony; that this deposition was
     taken at the time and place in the foregoing caption
9    specified.

10           I do further certify that I am not a
     relative, employee or attorney of any of the parties
11   hereto; that I am not a relative or employee of any
     attorney or counsel employed by the parties hereto;
12   that I am not financially interested in the action; and
     further, I am not, nor is the court reporting firm with
13   which I am affiliated, under contract as defined in
     Civil Rule 28(D).

14
             In witness whereof, I have hereunto set my
15   hand and affixed my seal of office at Lewis Center,
     Ohio, on this 19th day of May, 2022.

16

17

18

19

20                    _____
                      Tracy J. Schell
21                    Notary Public, State of Ohio.

22   My commission expires:  November 5, 2023

23

24

25