CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., and T.H., <br><br> Plaintiffs, <br><br> v. <br><br> RED ROOF INNS, INC., FMW RRI NC, LLC, RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, VARAHI HOTEL, LLC, WESTMONT HOSPITALITY GROUP, INC., and RRI III, LLC, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:20-cv-5263-MHC <br><br> JURY TRIAL DEMANDED <br><br> Pursuant to Fed. R. Civ. P. 38 |

**PL Sum. J. Ex. 077**

### PLAINTIFF K.P.'S AMENDED AND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT RED ROOF INNS, INC.'S FIRST INTERROGATORIES

Plaintiff K.P. ("K.P." or "Plaintiff") hereby provides these amended and supplemental objections and responses to Defendant Red Roof Inns, Inc.'s First Interrogatories (the "Interrogatories"). Plaintiff reserves the right to amend and supplement these responses as discovery progresses. Plaintiff states that, to the extent she provides the identity of Victims of Sex Trafficking in responding to these Interrogatories, she does so only subject to

#3376989v1

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Plaintiff will not provide such information. Plaintiff also objects to this Interrogatory as unduly burdensome, and imposes a burden disproportional to the needs of this case. And Plaintiff also objects to this Interrogatory because it asks for information that is or will be equally accessible to the Defendant in this case. And Plaintiff objects to this Interrogatory to the extent it prematurely calls for an exhibit list in advance of trial. Plaintiff will provide information according to the timelines set forth in this Court's Local Rules and any pretrial orders.

Subject to these objections and the foregoing objections to definitions and instructions, Plaintiff states that she will produce documents that support her claims in this matter, from which Defendants can ascertain the information requested as easily as Plaintiff. Likewise, to the extent Defendants produce documents that contain, reflect, or substantiate any facts or issues in this case, the information Defendants request is within Defendants' possession, custody and control.

**INTERROGATORY NO. 12:** **Please provide a timeline of your Trafficking Occurrences at RRI Atlanta from 2009-2011, with specific reference to the day, month, year. For each occurrence identified, please include: the location of each Trafficking Occurrence; the identity of the organization trafficking you; the name and role of every individual trafficker that assisted or facilitated trafficking you; the names and roles of every hotel personnel, agent, or otherwise that in any way assisted or facilitated each Trafficking**

18

#3376989v1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Occurrence; the means employed to prevent you from leaving; which, if any, of the other Plaintiffs to this lawsuit that were also trafficked at the same location for each Trafficking Occurrence; and the names of other victims or witnesses with knowledge for each Trafficking Occurrence.**

**ORIGINAL RESPONSE TO INTERROGATORY NO. 12:** Plaintiff objects to this Interrogatory to the extent it calls for information that is protected by the attorney-client privilege, work product doctrine, or any other privilege. Plaintiff will not reveal such information. And Plaintiff objects to this Interrogatory to the extent it calls for information that is not in Plaintiff's possession, custody or control.

Subject to these objections, the foregoing objections to definitions and instructions, Plaintiff refers Defendant to her response to Interrogatory No. 9. Plaintiff further provides the following description of her trafficking:

K.P. was trafficked from about 2010 through late 2016 by ▆▆▆▆ "Tricky"  at various hotels including:

- The ESA-Peachtree Road located on Peachtree Road in Brookhaven, Georgia (approximately 2011–2014)
- The Red Roof Inn located on North Druid Hills Rd. in Atlanta, Georgia (approximately 2011– 2014)
- A Red Roof Inn located in Baltimore, Maryland (about 20 to 30 times in 2011 and possibly 2012)
- Suburban Extended Stay located on Peachtree Industrial Court in Chamblee, Georgia (approximately 2011–2015)
- Microtel Inn & Suites located on Corporate Blvd in Atlanta, Georgia (approximately 2011–2016)

19

#3376989v1

## CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- Ramada Inn located in Alpharetta, Georgia (approximately 2013/2014–2016/2017)
- DoubleTree located on North Druid Hills Rd. in Atlanta, Georgia (2011–2016)

While trafficked at these hotels, the signs of K.P.'s trafficking were open and obvious. For example, K.P. and other sex trafficking victims were often dressed in sexually suggestive clothing and were seen with multiple buyers throughout the day. The constant stream of male buyers to K.P.'s room and the rooms of other sex trafficking victims, for stays of about an hour each, was a sure sign of commercial sex activity. The trashcans in the rooms where K.P. stayed would fill with used condoms that housekeeping would dispose of. And K.P. and other sex trafficking victims requested a large volume of extra towels and bed sheets because of the commercial sex activity occurring in the room.

K.P.'s trafficking began when she was about 21 years old, around the same time she gave birth to her son. She was working, but she often also gave friends rides for extra money. She met a man who went by the name "Diablo." Diablo's real name is ▮▮▮▮▮▮▮▮▮▮▮▮. Diablo tried to talk K.P. into working for him as a commercial sex worker. K.P. was terrified at the time and rejected Diablo's offer. But she had just had her son and was suffering from post-partum depression and bipolar disorder.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Diablo continued to press K.P. to engage in commercial sex, using her fragile state to manipulate her. He introduced her to a variety of people including a man named Kwan and his mother Lenny, who agreed to watch K.P.'s son at times. She also met a sex trafficking victim named ████

At this time, K.P. continued working multiple jobs to make ends meet. But she was still spending time with Diablo and his associates, who continued to press K.P. to engage in commercial sex. K.P. eventually agreed to assist Diablo and other pimps or associates by driving them around as needed.

At some point, K.P. met a man named Tradelle Lacy, who went by "Tricky" or "T." Mr. Lacy made K.P. feel safe and treated her nicely at first. K.P. knew that Mr. Lacy was selling drugs and acting as a pimp, along with Diablo and Diablo's other associates. Just as Diablo had tried to do, Mr. Lacy manipulated K.P. into feeling wanted and needed by buying her gifts, among other things, in order to persuade her to let him sell her body for sex. K.P. does not recall exactly how it happened, but she finally broke down and agreed to engage in commercial sex for Mr. Lacy.

Mr. Lacy then began to traffic K.P. for sex at various hotels. K.P. recalls Mr. Lacy taking her outside of Georgia on a number of occasions for

21

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

commercial sex, including to Baltimore, Maryland, North Carolina, and Florida. While in Florida, K.P. recalls meeting Mike Beene (a/k/a "Fresh"), another trafficker and associate of Mr. Lacy.

Mr. Lacy, Fresh, and their associates, including a trafficker named ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ III ("Bagz"), had formed a group called the PIVIP, which stood for Pimps in Very Important Places. K.P. believes Bagz was the head of PIVIP. The PIVIP group trafficked women for sex at hotels in Atlanta and elsewhere. Other members of PIVIP that K.P. met during the time she was trafficked include: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (a/k/a "Quan") and ▇▇▇▇▇▇▇▇▇▇ (a/k/a "CB").

K.P. also met C.A., who had just gotten out of rehab. K.P. and C.A. became friends and were trafficked together over the years. She was also trafficked with ▇▇▇▇▇▇▇▇▇▇ (a/k/a Jane Doe 1 in *Jane Doe 1 v. Red Roof Inns, Inc.*) and ▇▇▇▇▇▇▇▇▇▇ (a/k/a Jane Doe 3 in *Jane Doe 3 v. Red Roof Inns, Inc.*).

While she was trafficked, Mr. Lacy used threats and fear to force K.P. to remain as his sex trafficking victim. He threatened to tell people about what she did for money if she stopped. He was violent every once in a while, but he also exploited K.P.'s mental health issues and anxieties. For example,

22

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

K.P. witnessed other traffickers be very violent with their victims. She felt like she had to stay with Mr. Lacy because if she wasn't with him, one of the other traffickers might take control over her and beat her.

From about 2011 to 2014, K.P. was trafficked frequently out of the Atlanta Red Roof Inn on North Druid Hills Road. She was likely there as many as thirty times over the course of her trafficking and often with another victim, C.A., identified in response to Interrogatory No. 9. She may have rented the rooms at this hotel using her real name, but she believes her trafficker, Mr. Lacy, or other trafficking victims may have also gotten rooms in his or their own names. Other traffickers that trafficked victims out of this hotel include Kuuk, Bagz, and Fresh. On any given day, there could be as many as five other traffickers at this hotel (and at times even more), each with multiple trafficking victims who were seeing dozens of buyers throughout the day. The victims would hang out around the hotel, and it was obvious to anyone who would pay attention that there was extensive sex trafficking occurring at the hotel. She also recalls interacting with staff at this hotel. And she likely interacted with front desk staff as well when booking rooms or walking in and out of the hotel.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

From about 2011 through 2014, K.P. was frequently trafficked from the ESA-Peachtree Road located at 3967 Peachtree Rd., Atlanta, GA 30319. During her stays at the ESA-Peachtree Road, K.P. stayed from a few days to multiple weeks and saw from 2 to 8 buyers each day she was at this hotel. K.P. was often trafficked along with C.A. at this hotel, who either shared a room with K.P. or who stayed in a room nearby. If the two were in the same room, one would hide in the bathroom while the other was with a buyer. She was at this hotel so often to engage in forced commercial sex that the hotel employees would give her special privileges like access to the hotel's pantry.

K.P. had a traumatic breakdown as a result of the trafficking while at the ESA-Peachtree Road. She felt suicidal and scared and even tried to take her own life by swallowing Tylenol PMs. She called her best friend ▓▓▓▓ ▓▓▓▓▓▓ who lived in Atlanta at that time. She recalls ▓▓▓▓ taking her screaming, crying, and throwing things through the lobby of this hotel. Workers at the hotels observed her breakdown but did not intervene. ▓▓▓▓ took K.P. to the hospital. K.P. ended up at the Dekalb Crisis Center where she was committed for 10 days.

While K.P. was trafficked at hotels in the Atlanta area, including the ESA hotels identified above, she observed open and obvious signs of sex

24

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

trafficking activity. For example, cars would come to the hotel, stay for a short period of time, and then leave. Likewise, men whom K.P. understood were buyers of sex would come to visit hotel rooms, stay for a short bit, and then leave. This activity was obvious and easily observable from K.P. window at the ESA-Peachtree Road, for example.

During her stays at ESA hotels, K.P. often appeared in the lobby after the regular breakfast hours, because she was required to "work"—servicing buyers for commercial sex—during the night. During these times, the ESA hotel employees observed her physical appearance, which showed she was malnourished and tired. Hotel employees would have seen these signs of trouble when interacting with K.P. Some employees would even allow K.P. to access non-public areas where breakfast food was stored.

K.P. also saw volumes of buyers at the Suburban Extended Stay hotel identified above, where she also witnessed other traffickers (such as CB, Kwan, and Bagz) along with their victims. K.P. estimates that on average, there would be between 50 and 100 buyers coming through this hotel on any given day. This was a hotel K.P. would visit when the traffickers and their victims (including C.A. and Jane Doe 1) did not have a lot of money. K.P.

25

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

witnessed Kwan joking with staff here, suggesting that he had a close relationship with them and that they knew about the trafficking.

Likewise, K.P.'s trafficking at the Microtel Inn & Suites was open and obvious. K.P. recalls that, at the direction of her traffickers, she would give staff at this hotel tips for extra linens to look the other way when the trafficking would take place rather than call the police. K.P. believes she stayed on the second or third floor of this hotel.

K.P. reserves the right to supplement or amend this response as discovery progresses.

**SUPPLEMENTAL/AMENDED RESPONSE**: Plaintiff provides the following additional or amended information in response to this Interrogatory:

- K.P. states that she was only in Baltimore a small number of times so, upon reflection, she probably visited the Red Roof Inn in Baltimore less than 20 times.

- K.P.'s trafficking started when her son ▇▇▇ about 10 months, so K.P. was almost 22 years old at the time.

- "Kwan" may also be spelled "Quan."

26

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- When K.P. met T, she knew he was selling drugs and, though she understood he was doing other things for ▮▮▮▮ to assist her, she did not fully understand that it was pimping.

- In addition to meeting ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ in connection with the PIVIP group, K.P. also met Bless, Kuuk, and Anthony Shivers.

**INTERROGATORY NO. 13:** Please identify and describe in reasonable detail every injury, illness, condition, inability to function, diagnosis received (from any individual or facility identified below in Interrogatory No. 12) or anything else that you contend was directly and/or proximately caused by the events alleged in your Second Amended Complaint, the duration each existed, and to what extent you have recovered from each.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 13:** Plaintiff objects to this Interrogatory as vague and confusing because it asks for detail of every "inability to function." Plaintiff further objects to this Interrogatory to the extent it is premature because it calls for information subject to disclosure under Federal Rule of Civil Procedure 26(a)(2). Plaintiff will disclose such documents and information at the appropriate time and to the extent required under the Federal Rules, this Court's Local Rules, and any scheduling orders of this Court.

27

#3376989v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., and T.H., <br><br> Plaintiffs, <br><br> v. <br><br> RED ROOF INNS, INC., FMW RRI NC, LLC, RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, VARAHI HOTEL, LLC, WESTMONT HOSPITALITY GROUP, INC., and RRI III, LLC, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:20-cv-5263-MHC <br><br> JURY TRIAL DEMANDED <br><br> Pursuant to Fed. R. Civ. P. 38 |

## **VERIFICATION**

The answers set forth in **PLAINTIFF K.P.'s AMENDED AND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT RED ROOF INNS, INC.'S FIRST INTERROGATORIES** are true and correct to the best of my knowledge, information and belief based on the information currently available to me. I reserve the right to make changes to these Objections and Responses if it appears that an error or omission has been made therein or if more information becomes available.

      I hereby verify, pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury that the factual information contained in the foregoing responses to

#3383222v1

interrogatories is true and correct to the best of my knowledge, information and belief.

This ____ day of May, 2022.

[signature redacted]   5/18/2022

K.P.

#3383222v1