IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOES 1–4,<br><br>    Plaintiffs,<br><br>v.<br><br>RED ROOF INNS, INC., et al.<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:21-cv-04278-WMR |

**ORDER**

This matter is before the Court on Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC's (collectively "Red Roof Defendants") Motion for Summary Judgment Against Plaintiff Jane Doe 1 [Doc. 148], Motion for Summary Judgment Against Plaintiff Jane Doe 2 [Doc. 149], Motion for Summary Judgment Against Plaintiff Jane Doe 3 [Doc. 150], and Motion for Summary Judgment Against Plaintiff Jane Doe 4 [Doc. 151]. Upon consideration of the arguments presented and authorities cited by the parties, the applicable law, and all appropriate matters of record, all of the motions for summary judgment are **DENIED**.

1

## I. BACKGROUND

Plaintiffs Jane Doe 1, Jane Doe 2, and Jane Doe 3 bring claims against the Red Roof Defendants for damages resulting from their alleged trafficking at two Red Roof hotel locations: the Smyrna Red Roof hotel located at 2200 Corporate Plaza, Smyrna, Georgia 30080; and the Buckhead Red Roof hotel located at 1960 N. Druid Hills, Atlanta, Georgia 30329. Plaintiff Jane Doe 4 brings claims against the Red Roof Defendants for damages resulting from her alleged trafficking only at the Smyrna Red Roof hotel.

At all times during the alleged trafficking, the Buckhead Red Roof hotel was owned and operated by the Red Roof Defendants under the following framework: RRI III, LLC was the real estate holding company that owned the land; RRI West Management, LLC was the management company that operated the hotel and employed regional staff; and Red Roof Inns, Inc. was the corporate entity that employed the local hotel staff.

The Smyrna Red Roof hotel was likewise owned and operated by the Red Roof Defendants during the alleged trafficking of Jane Doe 3 and Jane Doe 4. However, during the relevant periods of trafficking alleged by Jane Doe 1 and Jane Doe 2, the Smyrna Red Roof hotel was owned and operated by Varahi Hotel, LLC. In December 2012, Varahi had contracted with Defendant Red Roof Franchising,

LLC to use the brand and Varahi paid royalties and fees to Red Roof Franchising, LLC, which in turn paid Defendant Red Roof Inns, Inc.

All four Plaintiffs allege the Red Roof Defendants: (1) violated the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A § 16-14-4(a) and (c), and are subject to civil liability for their operation of the hotel(s); (2) violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and are subject to civil liability for their operation of the hotel(s); and (3) were negligent in failing to keep the hotel(s) safe and secure.[1]

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

---

[1] Varahi has indicated that it has reached a settlement with Plaintiffs which would involve Plaintiffs' dismissal of their claims against Varahi and certain claims against the Red Roof Defendants—namely those related to Red Roof's alleged negligence at the Smyrna location during the time it was franchised by Varahi.

functions" and cannot be made by the district court in considering whether to grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (stating same standard).

If a movant meets its burden, the party opposing summary judgment must present evidence that shows there is a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 324. In determining whether a genuine issue of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. *Anderson*, 477 U.S. at 255; *see also Graham*, 193 F.3d at 1282 ("[T]he evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor.").

If the record presents genuine factual issues, "a trial judge must not make findings but is required to deny the motion and proceed to trial." *Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson*, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving

party. *Id.* But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Plaintiffs' Negligence Claims

Under Georgia law, "[t]he essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 311 Ga. App. 693, 695 (2011) (citation and punctuation omitted). Among other duties relevant in this case, Georgia law "imposes a nondelegable duty upon a landowner to keep [its] premises in a reasonably safe condition." *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 462 (2003) (*en banc*). This includes the duty to protect against reasonably foreseeable criminal acts which do not sever any causal relationship with a plaintiff's injuries. *Id.* Reasonable foreseeability does not require "actual knowledge of criminal conduct," *Walker v. Aderhold Props., Inc.*, 303 Ga. App. 710, 713 (2010) (*en banc*), nor does it require—as Defendants argued—substantially similar criminal acts. *Georgia CVS Pharmacy, LLC v. Carmichael*, --- Ga. ----, S22G0527, 2023 WL 4247591, at *5 (Ga. June 29, 2023). "[T]he pertinent question is whether the totality of the circumstances relevant

to the premises gave the proprietor sufficient 'reason to anticipate the criminal act' giving rise to the plaintiff's injuries on the premises." *Id.* Reasonable foreseeability can also be proven with evidence that the owner "acknowledge[d]" the danger at issue, or "a danger could be so obvious that an issue for jury determination could exist regarding notice and/or foreseeability despite the absence of a prior similar incident on those premises." *Wallace v. Boys Club*, 211 Ga. App. 534, 536 n.2 (1993).

Thus, a defendant remains "liable for third-party criminal attacks if [defendant] has reasonable grounds to apprehend that such a criminal act would be committed but fails to take steps to guard against injury." *TGM*, 264 Ga. App. at 462. Moreover, "it is well settled that the question of reasonable foreseeability [of a crime] is generally a question for the jury to decide." *Carmichael*, 2023 WL 4247591, at *4.

The Red Roof Defendants argue that Plaintiffs' negligence claims relating to the Buckhead and Smyrna Red Roof hotels fail as a matter of law because the criminal acts of third parties, like Plaintiffs' traffickers, were not foreseeable and severed any causal relationship with Plaintiffs' alleged injuries. However, the Court finds that genuine issues of material fact exist regarding the negligence claims.

Prior incidents of prostitution are sufficiently similar to the crimes that caused Plaintiff's injuries—namely, keeping a place of prostitution, prostitution, pimping,

and sexual servitude—to make the latter crimes foreseeable. There is evidence to show that, before and during the relevant time periods, consumer feedback and police activity alerted the Red Roof Defendants that prostitution and pimping was occurring at the Buckhead and Smyrna Red Roof hotels. Furthermore, there is evidence showing that hotel employees at both locations were aware of the prostitution occurring on the premises, they acknowledged that prostitution and sex trafficking share common indicators, and they reported the criminal activity to management. Because there is both evidence of prior, substantially similar criminal acts and evidence that the inherent danger of the sex trade was otherwise known to the Red Roof Defendants, a genuine issue of material fact exists as to whether the danger of third-party criminal conduct here was reasonably foreseeable. Therefore, the Red Roof Defendants are not entitled to summary judgment on Plaintiffs' negligence claims.[2]

### B. Plaintiffs' TVPRA Claims

A trafficking victim has a civil claim against anyone who "knowingly benefits…financially or by receiving anything of value from participation in a

---

[2] The Court is not concluding, and indeed has serious reservations, whether a claim for negligence and/or premises liability is appropriate for the circumstances this case presents. However, the Court will reserve its consideration of such arguments for any post-trial motions related to this issue.

7

venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. 18 U.S.C. § 1595(a). The TVPRA prohibits using force, fraud, or coercion to induce a person to engage in commercial sex or knowingly assisting another who commits such acts. 18 U.S.C. § 1591. Thus, TVPRA "beneficiary claims," like the ones brought by Plaintiffs, give victims a cause of action against those who have profited from their exploitation even when that exploitation occurs as a result of another's force, fraud, or coercion. *See A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678, at *7 (E.D. Pa. Apr. 22, 2020). As the Eleventh Circuit established in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021), a person can be liable without participating in the sex trafficking act itself. What is required is that:

> the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit [*i.e.*, participation in a venture], (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 726. The Red Roof Defendants do not challenge the fact that they received a benefit from the alleged trafficking in the form of room rental revenue. Rather, they argue that there is no evidence that they knowingly participated in the criminal enterprise.

8

As to whether the Red Roof Defendants knowingly benefitted from participation in a venture that violated the TVPRA, the Court notes that "[k]nowledge requires '[a]n awareness or understanding of a fact or circumstance.'" *Doe #1*, 21 F.4th at 725. But it is well established that a federal claim's "knowledge element" "can be proved by demonstrating either actual knowledge or deliberate ignorance." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). "[I]f a party has his suspicions aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." *Id.* And to prove either actual knowledge or deliberate ignorance, Plaintiff may rely on both direct evidence and circumstantial evidence based on the "totality" of circumstances. *United States v. Perez,* 698 F.2d 1168, 1171 (11th Cir. 1983).

Here, there is evidence from which a jury could find that the Red Roof Defendants had an ongoing business relationship with known pimps and prostitutes in which they rented rooms to be used for commercial sex and that Defendants knew or should have known that this venture involved violations of the TVPRA. Such evidence includes, but is not limited to, testimony that: hotel employees regularly observed pimps and prostitutes using the rooms; some of the prostitutes appeared to be young or underage; Red Roof management had received complaints of

9

prostitution and, as a result, asked hotel employees to book suspected sex workers in rooms located in the back of the hotel where they would be less visible to guests; some employees acted as lookouts and notified the pimps when police were nearby or on the premises; and some of the prostitutes had an emaciated appearance and exhibited signs of physical abuse and Defendants were aware that these manifestations are known indicators of sex trafficking.

The Court acknowledges that, in December 2012, the Red Roof Defendants transferred ownership and control of the Smyrna Red Roof hotel to Varahi Hotel, LLC under a franchise agreement and that a portion of Jane Doe 1 and Jane Doe 2's TVPRA claims relate to their alleged trafficking that occurred at the Smyrna hotel after that transfer of ownership. However, after considering the totality of the circumstances, the Court finds that the Red Roof Defendants' participation in the venture was not so tangential as to require summary judgment on those claims. As noted above, the evidence shows that the Red Roof Defendants had an ongoing relationship with known pimps and prostitutes at their Smyrna Red Roof hotel before they sold it to the franchisee, Varahi. The evidence shows that, prior to this sale, the Red Roof Defendants and their employees were aware that they were profiting from renting rooms to those pimps and prostitutes. Although Varahi purchased the Smyrna hotel in 2012, there is evidence that the Red Roof Defendants continued to

participate in this venture, although to a lesser degree. For example, the evidence shows that, after the transfer of ownership, the Red Roof Defendants continued to receive reports of prostitution at the Smyrna Red Roof hotel, they did not take any steps to revoke Varahi's use of their "Red Roof" brand, and they knowingly received royalties from Varahi's participation in the same venture.

Based on the foregoing, the Court finds that there is a genuine issue of material fact as to whether the Red Roof Defendants either knew or should have known that they benefitted from participating in a venture that violated the TVPRA. Therefore, the Red Roof Defendants are not entitled to summary judgment on Plaintiffs' TVPRA claims.

### C. Plaintiffs' RICO Claims

To establish their Georgia RICO claims, Plaintiffs must show that: (1) the Red Roof Defendants acquired or maintained an interest in or control of money; (2) through a pattern of racketeering activity; and (3) the racketeering activity harmed Plaintiffs. O.C.G.A. §§ 16-14-4(a), 16-14-3(4)(A). The Red Roof Defendants do not challenge the first element, but they argue that Plaintiffs failed to present evidence as to the second and third elements. The Court disagrees.

"Racketeering activity" means to "commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit" certain enumerated crimes known

11

as predicate acts. O.C.G.A. § 16-14-3(5)(A). Among the predicate acts relevant here are keeping a place of prostitution, prostitution, pimping, and sex trafficking. *See* O.C.G.A § 16-14-3(5)(A)(vi)-(vii). A pattern of racketeering activity requires just two related predicate acts. O.C.G.A. § 16-14-3(4)(A); *Dorsey v. State*, 279 Ga. 534, 540 (2005).

Here, the record would permit a jury to find that the Red Roof Defendants committed or aided in the commission of the predicate act of "keeping a place of prostitution" at the Buckhead and Smyrna Red Roof hotels. A person or legal entity keeps a place of prostitution when they "hav[e] or exercise[e] control over the use of any place or conveyance which would offer seclusion or shelter for the practice of prostitution" and they "knowingly grant[] or permit[] the use of such place for the purpose of prostitution." O.C.G.A. § 16-6-10. Plaintiffs testified to being repeatedly sold for sex, and hotel employees admitted to not just observing but, in some cases, knowingly renting rooms to the prostitutes or their pimps.

The record would also permit a jury to find that the Red Roof Defendants were parties to the commission of the predicate acts of sex trafficking, prostitution, and pimping. Although the Red Roof Defendants argue that they were not "directly involved" in the commission of these predicate acts, Plaintiffs' claims do not require that the Red Roof Defendants' employees directly sold Plaintiffs for sex. Under

12

Georgia law, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime," including anyone who "intentionally aids and abets" or "intentionally advises, encourages, hires, counsels or procures another to commit the crime." O.C.G.A. § 16-2-20(a), (b)(3)-(4); *Coggins v. State,* 275 Ga. 479, 480 (2002). This same principle applies to the commission of predicate acts for civil liability under Georgia RICO. *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1398 (11th Cir. 1994) (one who aids and abets two predicate acts can be civilly liable under RICO). Here, there is evidence to show that the Red Roof Defendants not only knew of and allowed the prostitution at the hotels, including the prostitution of young or underage girls, but also that they actively assisted in the commission of those crimes by directing suspected prostitutes or their pimps to rooms in the back of the hotels where they would not be observed and, through their employees, alerting them of any police presence.

Again, the Court acknowledges that, in December 2012, the Red Roof Defendants transferred ownership and control of the Smyrna Red Roof hotel to Varahi Hotel, LLC under a franchise agreement. Although a portion of Jane Doe 1 and Jane Doe 2's RICO claims relate to alleged trafficking that occurred at the Smyrna hotel after the transfer of ownership, the Court finds that there is evidence

13

to show that the Red Roof Defendants aided and assisted in the commission of the predicate acts (in a different way) by allowing Varahi to continue to use their "Red Roof" brand, thereby providing Varahi and the alleged traffickers a certain degree of marketability for the continuation of the venture at that location.

Based on the foregoing, the issue of whether the Red Roof Defendants engaged in a pattern of racketeering activity, either directly or as parties to the predicate acts, is a question of fact for the jury.

The Red Roof Defendants also argue that there is no causal connection between the racketeering activity (predicate acts) and Plaintiffs' injuries because there is no evidence to show that Plaintiffs, specifically, were the intended victims of any conduct on their part. The Defendants cite *Wylie v. Denton*, 323 Ga. App. 161 (2013), to support their argument that Plaintiffs' injuries are too attenuated because the injuries weren't "the direct result of a predicate act targeted toward" them. *Id*. at 166. But contrary to Defendants' contention, *Wylie* does not hold that a RICO defendant is liable *only* if it specifically targets that plaintiff as its intended victim. Instead, *Wylie* stands for the non-controversial proposition that "a plaintiff must show that her injury flowed directly from at least one of the predicate acts[,]" and where the plaintiff is not among those who were directly affected by the predicate acts, then the plaintiff's injury is too attenuated. *Id.* In *Wylie*, the pattern of

14

racketeering—a scheme to embezzle from a construction company perpetrated by a company employee and assisted by a bank manager—targeted the construction company, not the plaintiff bank employees. *Id*. at 163. Thus, bank employees who were fired after the scheme came to light could not sue for wrongful termination. *Id*. The scheme was not directed towards employees generally, so any of those employees' loss of their jobs was too remote an injury to establish proximate cause. *Id*. at 169. But here, a jury could find that the predicate acts target the women who were sold for sex and that Plaintiffs' injuries were causally connected because Plaintiffs were was among the class of people targeted by Defendants' predicate acts. It is hard to imagine any party who suffered a more direct injury from keeping a place of prostitution, prostitution, and pimping than the Plaintiffs who allege they were sold for sex through force, fraud, coercion, and deception. Thus, the evidence in the record supports a direct nexus between Defendants' decision to profit from prostitution and Plaintiffs' resulting injuries.

The Red Roof Defendants also argue that Plaintiffs' RICO conspiracy claims fail as a matter of law because Plaintiffs cannot show that there was an express agreement between any of the Defendants and Plaintiff's alleged sex traffickers to engage in the racketeering activities and because there is no evidence the Red Roof Defendants committed any overt in furtherance of the alleged conspiracy.  The Court

15

is unpersuaded by these arguments.

Under Georgia law, a person is deemed to have engaged in a RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Cotman v. State*, 342 Ga. App. 569, 585 (2017). Further, a conspiracy "may be a mere tacit understanding between two or more people that they will pursue a particular criminal objective," *Akintoye v. State*, 340 Ga. App. 777, 781 (2017), and a tacit understanding may be shown by circumstantial evidence or "by inference as well as deduction from conduct." *Brown v. State*, 177 Ga. App. 284, 295 (1985). It may be inferred based upon the nature of the acts done, the parties' relationship, their interests, and other circumstances. *Studivant v. State*, 309 Ga. 650, 651 (2020). As discussed above, the record shows evidence that the Red Roof Defendants and the alleged sex traffickers shared a common objective of making money, either directly or indirectly, from the prostitution and trafficking. There is also circumstantial evidence of a tacit understanding between them that the Defendants would further this criminal enterprise by providing a hospitable environment for the prostitution and trafficking to occur in exchange for receiving the room revenue that was generated by the criminal activity. Additionally, for civil liability, Georgia RICO does not require a defendant to "personally commit[] the underlying predicate offenses," only that a

member of the conspiracy does so. *Pasha v. State*, 273 Ga. App. 788, 790 (2005). As members of alleged conspiracy to violate RICO, the Defendants would be responsible for all acts committed in furtherance of the criminal endeavor. *Id.* Therefore, the Court finds that there is a genuine issue of material fact as to whether the Defendants engaged in a RICO conspiracy for which they are civilly liable.

Lastly, the Red Roof Defendants argue that, as legal entities rather than persons, they were mere instrumentalities, or victims, of the racketeering and cannot be held liable under RICO. Specifically, they argue that a corporation may only face RICO liability if it is a party to or involved in its employee-perpetrator's commission of the predicate crimes. This corporation-agent concept comes from O.C.G.A. § 16-2-22(a)(2) which, in relevant part, provides that a corporation may face criminal liability only if its board or a manager "authorized, requested, commanded, performed, or recklessly tolerated" the crime. But the Georgia Supreme Court in *Williams General Corp. v. Stone*, 280 Ga. 631 (2006), specifically declined to apply this statute to a civil RICO claim. *Id*. at 632–33. Instead, it held that a corporation is a "person" or an "individual" for the purposes of Georgia RICO and can be civilly liable for the acts of its agents just as any other person would be. *Id.* And as detailed above, there is evidence from which a jury could conclude that the Red Roof Defendants, through their agents, actively participated in, assisted, facilitated, and

17

knowingly benefitted from the criminal enterprise at both hotels.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC's Motion for Summary Judgment Against Plaintiff Jane Doe 1 [Doc. 148], Motion for Summary Judgment Against Plaintiff Jane Doe 2 [Doc. 149], Motion for Summary Judgment Against Plaintiff Jane Doe 3 [Doc. 150], and Motion for Summary Judgment Against Plaintiff Jane Doe 4 [Doc. 151] are **DENIED**.

SO ORDERED, this 10th day of August, 2023.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE