**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE 2-4 and CAROLYN LEVY GILLIAM as the ADMINISTRATOR OF THE ESTATE OF JANE DOE 1,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>RED ROOF INNS, INC.;<br>FMW RRI NC, LLC;<br>RED ROOF FRANCHISING, LLC;<br>RRI WEST MANAGEMENT, LLC;<br>VAHARI HOTEL, LLC;<br>WESTMONT HOSPITALITY<br>GROUP, INC.; and<br>RRI III, LLC,<br><br>　　　　Defendants. | Civil Action No.<br>1:21-cv-4278-WMR |

## PLAINTIFFS' MOTION TO EXCLUDE IMPROPER TESTIMONY OF DEFENDANTS' EXPERT DR. KIMBERLY MEHLMAN-OROZCO

# **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

ARGUMENT AND CITATION OF AUTHORITY ...........................................2

I.     The Court should exclude any testimony relating to Dr. Mehlman-
       Orozco's theory of "Secondary Exploitation" as a baseless and
       improper attack on Plaintiffs' counsel and witnesses. .............................3

       A.     Dr. Mehlman-Orozco's theory of "Secondary Exploitation" is
              unsupported. ...............................................................................3

       B.     Dr. Mehlman-Orozco's unprofessional attacks on Plaintiffs'
              counsel, based on her baseless theory of "Secondary
              Exploitation," are irrelevant. ...................................................4

       C.     Dr. Mehlman-Orozco's attacks on witnesses should be excluded
              because they are improper commentary on their credibility.........7

II.    The Court should preclude Dr. Mehlman-Orozco from providing
       testimony on legal standards. ......................................................................9

       A.     Opinion testimony regarding questions of law is inadmissible
              because it invades the province of the Court...................................9

       B.     Admitting Dr. Mehlman-Orozco's (incorrect) legal opinion here
              would only compound the error......................................................10

       C.     Dr. Mehlman-Orozco's opinions about the TVPRA's efficacy are
              similarly inadmissible. .................................................................13

III.   The Court should exclude any testimony about the misidentification of
       trafficking at airports because it is irrelevant and confusing. ...............14

CONCLUSION.................................................................................................16

# INTRODUCTION

The Federal Rules of Evidence and Civil Procedure and case law applying those authorities all require prohibiting the Red Roof Defendant's expert Dr. Kimberly Mehlman-Orozco from testifying at trial on three specific areas covered in her expert report. Though the report itself would be inadmissible for other reasons and Plaintiffs do not mean to suggest, by their motion, that expert reports are generally admissible or should be admitted in this case, Plaintiffs submit this motion because Dr. Mehlman-Orozco should not be permitted to offer live testimony or other evidence on these topics.

*First*, as Defendants' purported expert on sex trafficking, Dr. Mehlman-Orozco inexplicably devotes 11 pages of her report to irrelevant and inflammatory personal attacks on Plaintiffs' counsel and impermissible comments on the credibility of Plaintiffs' witnesses—all based on her unsupported theory of "Secondary Exploitation." None of this is germane to her expertise or helpful to the jury. *Second*, Dr. Mehlman-Orozco's report offers impermissible legal conclusions about the TVPRA's applicability—relying on a legal standard rejected by the Eleventh Circuit *in this case*—and irrelevant opinions on the wisdom of the TVPRA's civil cause of action. Such testimony is outside Dr. Mehlman-Orozco's area of expertise, it is an incorrect statement of the law, and—most importantly—it invades the province of the Court in instructing the jury on the governing law. *Third*,

Dr. Mehlman-Orozco's report inexplicably opines about the misidentification of trafficking victims at airports, even though this case concerns trafficking at hotels and there are no allegations that Defendants had anything to do with airports or air travel.

As to each of these three topics, the Court should preclude Dr. Mehlman-Orozco from providing this improper, irrelevant, and confusing testimony, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, as well as Federal Rule of Civil Procedure 26(a)(2) and Federal Rules of Evidence 702 and 403.

## ARGUMENT AND CITATION OF AUTHORITY

Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert* generally govern the admissibility of expert testimony. *Daubert* requires trial courts to act as "gatekeep[er]" and screen the admissibility of all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).[1]

As the gatekeeper, the Court must "engage in a rigorous three-part inquiry" to determine whether any expert should be permitted to offer her opinions. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The Court must consider whether: "(1) the expert is qualified to testify competently regarding the matters he

---

[1] Internal quotations, citations, and alterations are omitted from legal citations and emphasis is added, unless otherwise noted.

intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable;" and (3) the testimony, through the application of the witness's expertise, assists the trier of fact "to understand the evidence or to determine a fact at issue." *Id*.

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This analysis is "one of fit." *Daubert*, 509 U.S. at 591.

I. **The Court should exclude any testimony relating to Dr. Mehlman-Orozco's theory of "Secondary Exploitation" as a baseless and improper attack on Plaintiffs' counsel and witnesses.**

A. **Dr. Mehlman-Orozco's theory of "Secondary Exploitation" is unsupported.**

In Section X of her report, Dr. Mehlman-Orozco briefly discusses a theory she refers to as "Secondary Exploitation," and then uses this theory to wage personal attacks on Plaintiffs' counsel and others who provide services to sex trafficking survivors, including witnesses in this case. (Ex. 1, Mehlman-Orozco Report at 32-42). But as this report and Dr. Mehlman-Orozco's deposition make clear, there is no scientific or experiential basis for Dr. Mehlman-Orozco's theory of "Secondary Exploitation." Indeed, the authority Dr. Mehlman-Orozco cites for this theory is, conveniently, a book she authored. (Ex. 1, Mehlman-Orozco Report at 32). And the

3

only other source for Dr. Mehlman-Orozco's theory is "an analytical auto-ethnography" article, whose author "introduces the concept," which the author "conceptuali[zed] as *secondary exploitation*."[2] Dr. Mehlman-Orozco's theory, therefore, which she uses to attack those who serve sex trafficking survivors, is not based on reliable or independently verifiable authority and is inadmissible because "it is connected to existing data only by the ipse dixit of the expert," that is, by the expert's own opinions or naked assurances. *Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Dukes v. Georgia*, 428 F.Supp.2d 1298, 1315 (N.D. Ga. 2006) (refusing to rely "on naked assurances of the purported expert" that his testimony was reliable and based on accepted standards).

### B. Dr. Mehlman-Orozco's unprofessional attacks on Plaintiffs' counsel, based on her baseless theory of "Secondary Exploitation," are irrelevant.

Despite the absence of any legally sufficient support, Dr. Mehlman-Orozco next parlays her theory of "Secondary Exploitation" into attacks on those who provide services to trafficking survivors. Her first target is Plaintiffs' counsel. Dr. Mehlman-Orozco begins with an unrelated, irrelevant, and inaccurate account of her interactions with Plaintiffs' counsel, who spoke with Dr. Mehlman-Orozco about

---

[2] Ex. 1 at 32, Cojocaru, Claudia. (2016). 'My Experience is Mine to Tell: Challenging the abolitionist victimhood framework', Anti-Trafficking Review, 7, pp. 12–38.

this case before Defendants ultimately hired her.[3] Dr. Mehlman-Orozco then accuses Plaintiffs' counsel of secondarily exploiting the Jane Does, going as far as referring to Plaintiffs' counsel as "[a]mbulance-chasing shysters" and "suggest[ing]" that counsels' care for Plaintiffs' well-being is "secondary to the seemingly-financially-motivated pursuit against the Defendants in this case." (Ex. 1, Mehlman-Orozco Report at 42). Dr. Mehlman-Orozco's personal and disparaging attacks are not just insulting, they are wholly irrelevant. They are unrelated to any issue in the case, fail to "logically advance" any "material aspect" of the case, *Allison v. McGhan Medical Corp.*, 184 F. 3d 1300, 1312 (1999), and are not "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.

Dr. Mehlman-Orozco's opinions of Plaintiffs' counsel are irrelevant because they do not make any consequential fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. Her opinions on Plaintiffs' counsel are irrelevant to the question of whether Plaintiffs were trafficked, whether they were trafficked at Defendants' hotels, whether Defendants knew or should have known about Plaintiffs' trafficking at their hotels, and whether Defendants permitted prostitution and sex trafficking at their hotels in violation of Georgia RICO.

---

[3] While Plaintiffs' counsel disputes Dr. Mehlman-Orozco's account, and have contemporaneous notes refuting her version of events, this motion's central aim is to avoid engaging in disputes about these irrelevant—albeit offensive—attacks, which ultimately have no bearing on the facts at issue.

Even Dr. Mehlman-Orozco seems to recognize that her attacks on Plaintiffs' counsel are irrelevant to the opinions she was hired to provide, and ultimately to this case. Tellingly, her own report includes a summary of her opinions and a conclusion of her findings, neither of which includes *any* reference to "Secondary Exploitation" or her attacks on Plaintiffs' counsel and other service providers. (Ex. 1, Mehlman-Orozco Report at 9 and 68). And because her opinions about Plaintiffs' counsel are irrelevant, they should be excluded. Just as her testimony on the propriety of holding a defendant liable under a criminal statute was irrelevant to any fact at issue in *United States v. Lacey*, because the advisability of a criminal statute's novel application was not a jury question, Dr. Mehlman-Orozco's personal assessments of Plaintiffs' counsels' character are irrelevant here because the wisdom of Plaintiffs' choice of counsel is likewise not a jury question. 18-cr-00422-001-PHX-SMB, 2020 WL 6290489, at *11 (D. Ariz. Oct. 27, 2020). The Court in *Lacey* limited her irrelevant testimony, and this Court should do the same.

Not surprisingly, there is an absence of case law on *Daubert* motions seeking to exclude an expert's personal attacks on an opposing party's counsel. It is uncommon precisely because it is inappropriate and irrelevant to any question presented to the jury. And if experts were allowed to launch personal attacks on an opposing party's counsel, like Dr. Mehlman-Orozco does here, no counsel would be able to represent a plaintiff that went through a traumatic experience without the risk

of being accused of secondarily exploiting their client. Dr. Mehlman-Orozco should be precluded from using her baseless theory of "Secondary Exploitation" to attack Plaintiffs' counsel.

### C.     Dr. Mehlman-Orozco's attacks on witnesses should be excluded because they are improper commentary on their credibility.

Dr. Mehlman-Orozco's baseless attacks don't stop at Plaintiffs' counsel. She next accuses both Michelle Sarkisian, an anti-trafficking advocate who alerted Red Roof's then-CEO Andrew Alexander of reports of trafficking at the Smyrna hotel, and the organization Rescuing Hope, whose mission is to "enlighten the public about sex trafficking in America, educate potential victims and first responders, and empower advocates and survivors," of secondarily exploiting the Jane Does. (Ex. 1, Mehlman-Orozco Report at 35-39).

Dr. Mehlman-Orozco accuses Michelle Sarkisian of secondary exploitation based on Alexander's speculation that Sarkisian sent him the reports of trafficking because she was looking for work. (Ex. 1, Mehlman-Orozco Report at 35).

Dr. Mehlman-Orozco then accuses Rescuing Hope of secondarily exploiting Plaintiffs because—by her estimation of their services of some of the Plaintiffs—the organization uses survivors' stories, including those of their clients, to recruit volunteers and to raise money and awareness. (Ex. 1, Dr. Mehlman-Orozco at 39). In these attacks, Dr. Mehlman-Orozco specifically names Susan Norris—the organization's founder and executive director—and a potential witness in Plaintiffs'

case.

Again, Dr. Mehlman-Orozco's attacks on Sarkisian, Norris, and by extension Rescuing Hope, are not only unprofessional, they are inadmissible. This is because the attacks amount to an opinion on the credibility of Plaintiffs' witnesses. An expert may not offer testimony regarding a witness's credibility, "which is a matter within the exclusive province of the jury." *United States v. Monroe*, 1:13-CR-76-RWS-CMS-2, 2015 WL 7176417, at *7 (N.D. Ga. Nov. 12, 2015) (collecting authority). After all, the issue of "a witness's credibility is one that lay persons are more than competent to handle without the need of expert testimony." *United States v. Arthur*, 10-cr-20753-PAS, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011) (excluding defendant's "credibility consultant").

To be sure, Sarkisian and Norris will be subject to cross-examination during trial, and Defendants may choose to cross-examine these potential witnesses about their motivation and why they chose to act as they did. But Dr. Mehlman-Orozco's pure speculation that these witnesses had nefarious or self-interested motivations is little more than attacking their credibility in the guise of "expert" testimony. Such evidence is routinely excluded and has been for decades, and not just in the cases cited above. *E.g.*, *Humbert v. City of College Park*, 1:05-CV-02740-GET, 2008 WL 5586504, at *4 (N.D. Ga. Aug. 18, 2008) ("The determination of a witness' credibility is within the exclusive province of the jury." (citing *United States v.*

8

*Billue*, 994 F.2d 1562, 1565 (11th Cir. 1993))). Accordingly, the Court should exclude testimony about so-called "Secondary Exploitation" not only because the theory is unsupported but because it amounts to a thinly veiled attack Plaintiffs' counsel and the credibility of Plaintiffs' witnesses.

## II.   The Court should preclude Dr. Mehlman-Orozco from providing testimony on legal standards.

Throughout her report, Dr. Mehlman-Orozco opines regarding her interpretation of the TVPRA and the meaning of terms within it. She even posits that the statute is bad policy, questioning the wisdom of the statute itself. But however much Dr. Mehlman-Orozco may disagree with the TVPRA's effectiveness, it remains federal law, and this Court—not she—must be the jury's sole authority on its meaning.

### A.   Opinion testimony regarding questions of law is inadmissible because it invades the province of the Court.

All witnesses, including expert witnesses, "are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." *Leathers v. State Farm Mut. Auto. Ins. Co.*, 1:12-CV-00198-SCJ, 2012 WL 13014634, at *4 (N.D. Ga. Dec. 3, 2012). This prohibition exists "because the Court determines the meaning of the law," while "the jury determines whether a party properly complied with the law." *Id.*

Dr. Mehlman-Orozco offers her interpretation of the TVPRA and the terms

within it throughout her expert report. This begins with the "Definitions" section, where she offers her own definitions—some incomplete or inaccurate—of terms within the TVPRA, including "sex trafficking," "sex trafficker," "sex trafficking victim," "venture," and others. (Ex. 1, Mehlman-Orozco Report at 7–8). As another example, Section IX of her report, titled "Knew or Should Have Known," does the same. (Ex. 1, Mehlman-Orozco Report at 30–31). Dr. Mehlman-Orozco, if allowed, would usurp the Court's authority by providing the jury with her interpretation of the TVPRA's terms and legal standards, a practice plainly prohibited by federal law.

**B.    Admitting Dr. Mehlman-Orozco's (incorrect) legal opinion here would only compound the error.**

The danger inherent in a witness, especially an expert, usurping the Court's role by opining on the applicable law is evident here where Dr. Mehlman-Orozco not only offers her own opinions of the TVPRA's meaning, but offers opinions plainly contrary to binding authority. For example, Dr. Mehlman-Orozco set out the incorrect legal standard for what constitutes a "venture" under the TVPRA, and then relied on this incorrect standard in her report. Dr. Mehlman-Orozco erroneously asserts that, to prove a venture under the TVPRA

> Plaintiff must allege specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. In other words, ***some participation in the sex trafficking act itself must be shown.***

(Ex. 1, Mehlman-Orozco Report at 46). Dr. Mehlman-Orozco relied on *Noble v.*

*Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) for this definition. And because Dr. Mehlman-Orozco will be introduced as an expert, a jury is likely to believe this is the standard they must apply.

This, however, is not the standard in the Eleventh Circuit and was not the standard when Dr. Mehlman-Orozco wrote her report. Dr. Mehlman-Orozco submitted her report on September 6, 2022, almost one year after the Eleventh Circuit established—in this case—that a plaintiff does not need to plead or prove a defendant's participation in the sex trafficking act itself to establish participation in a venture sufficient to support a civil beneficiary claim under the TVPRA. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). To the contrary, the Eleventh Circuit held that the phrase "participation in a venture" requires only "that the [plaintiff] allege that the [defendant] took part in a common undertaking or enterprise involving risk and potential profit." *Id.* Because of the danger of providing the jury with the wrong legal standard, Dr. Mehlman-Orozco should not be allowed to provide the jury with her interpretation of the meaning of the terms in the TVPRA or any other law applicable in this case.

And because Dr. Mehlman-Orozco then relied on the incorrect standard for a venture, she should also be precluded from providing *any* testimony about a venture here. Testimony about and based on an incorrect legal standard is necessarily unhelpful to jurors because testimony applying the wrong legal standard poses a

problem of "fit" requiring its exclusion. *United States v. Aegis Therapies, Inc.*, CV-210-072, 2015 WL 1541491, at *8 (S.D. Ga. Mar. 31, 2015) (quoting *WinnDixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1028 (11th Cir. 2014)). That is because where an expert relies on a wrong legal standard, the expert analyzes "the wrong problem and therefore do[es] not assist the trier of fact to determine a fact in issue." *Id.*

Thus, in *Aegis*, the court excluded testimony where the expert relied on a standard which was "decidedly at odds with the actual governing standards." 2015 WL 154191, at *8.  Likewise, in *Federal-Mogul Corp. v. Insurance Co. of the State of Pennsylvania*, the court excluded testimony that did not "fit" the factual question at issue precisely because the expert's opinion relied on a standard not applicable in the relevant jurisdiction. 12-cv-12005, 2016 WL 4486996, at *6 (E.D. Mich. Aug. 26, 2016); *see also Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 6:12-CV-33-ORL-28DAB, 2013 WL 12156465, at *12 (M.D. Fla. Jan. 4, 2013) (excluding expert's opinion which were based on a rejected legal standard); *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (excluding expert testimony based on "erroneous legal conclusions"). Just as in these cases, Dr. Mehlman-Orozco's definition of venture, rejected by the Eleventh Circuit, and any opinions based on that definition, should be excluded because they do not "fit" the factual or legal issues of this case and would not assist the jury.

## C.   Dr. Mehlman-Orozco's opinions about the TVPRA's efficacy are similarly inadmissible.

Finally, Dr. Mehlman-Orozco should be precluded from providing her opinions on the TVPRA's advisability or effectiveness, and more specifically, whether the TVPRA is "vague." Dr. Mehlman-Orozco writes, "It is believed that key aspects of the legal definition [of the TVPRA] were intentionally left vague in order to achieve legislative consensus, but this has resulted in the indiscriminate conflation of legal concepts and misidentification of victims." (Ex. 1, Mehlman-Orozco Report at 21). But whatever unnamed persons might have believed this, and Dr. Mehlman-Orozco's feelings about their judgment, are not relevant to whether Defendants are liable under the TVPRA.

The impermissibility of such testimony should not surprise Defendants' counsel, or Dr. Mehlman-Orozco, whose opinions on the propriety of other statutes have been excluded at least once before. In *Lacey*, the defendants—former officers, executives, and employees of Backpage.com—were indicted on a series of criminal charges related to their operation of the website and allegations that they knew it was used for prostitution and took steps to facilitate that activity. 2020 WL 6290489, at *1. The court prohibited Dr. Mehlman-Orozco, as the defendants' expert, from testifying about the effect of imposing liability on Backpage for advertisements placed by third parties or any other policy testimony because "the propriety of holding someone accountable for violating a criminal statute is not the role of the

jury." *Id.* at *11. Just as the *Lacey* court prohibited Dr. Mehlman-Orozco from testifying on the effects of imposing criminal liability under that statute, this Court should prohibit her from testifying on the propriety of the TVPRA's civil liability provisions. Dr. Mehlman-Orozco's personal or professional opinions of the TVPRA, its standards, or the effects of holding hotel defendants accountable under the TVPRA are irrelevant and inappropriate.

**III.   The Court should exclude any testimony about the misidentification of trafficking at airports because it is irrelevant and confusing.**

To be admissible, expert testimony must be relevant and assist the trier of fact in understanding the evidence or determining a fact at issue. *United States v. Castaneda*, 997 F.3d 1318, 1330 (11th Cir. 2021). Thus, the relevant question for a district court "is whether expert testimony" at issue "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id*.

Dr. Mehlman-Orozco, in her report, includes a discussion of "Human Trafficking 'Indicators' in Aviation." (Ex. 1, Mehlman-Orozco at 15–17). This section briefly mentions human trafficking training in aviation, briefly mentions only one "indicator" of the training (a "non-genuine relationship; particularly parent/guardian-child"), and then lists examples of false allegations of trafficking in aviation based on this single indicator. *Id.* This discussion about a single indicator in the aviation industry is irrelevant to the identification of trafficking at hotels.

14

To begin, it would appear that even Dr. Mehlman-Orozco would agree the single "indicator" discussed in her section on trafficking in aviation is not relevant to the lodging industry. After all, it is not included as one of the "indicators" in her "Human Trafficking 'Indicators' in Hospitality" section. The latter lists "general indicators" of human trafficking in the hospitality industry. The absence of a so-called "non-genuine relationship" indicator in Dr. Mehlman-Orozco's own list applicable in the hospitality industry—the only industry at issue in this litigation—in itself confirms its irrelevance to this case.

If that weren't enough, there is no basis in Dr. Mehlman-Orozco's report or elsewhere for the supposition that misidentification of trafficking in aviation is somehow connected to identifying trafficking at hotels. The testimony discusses identification of trafficking, using different indicators, in two very different settings. In the aviation industry, employees can observe their customers for, at most, a few hours at a time. By contrast, guests stay overnight at hotels and often for multiple days. And unlike airports or airplanes, hotels provide the location for the sex acts themselves. Hotel employees, unlike aviation employees, can see how many guests are coming in and out of rooms and at what frequency, how many towels and other linens are being used, how many condoms fill the trashcans, and more. These indicators are all absent in the aviation industry. Identification of trafficking at airports or in airplanes is simply irrelevant to the facts of this case.

And because of the vast differences between indicators of trafficking in aviation and indicators of trafficking at hotels, the Court should exclude this testimony for the additional reason that it would be confusing to the jury. *See, e.g., United States v. Bradley*, 4:05-cr-059, 2006 WL 8429683, at *2 (S.D. Ga. Feb. 20, 2006) (excluding testimony that drug diversion is regulated to prevent counterfeiting or terrorism in a case about a prescription-drug-based fraud scheme because the testimony was confusing where neither counterfeiting or terrorism were an issue in the case); *Newman v. State*, 334 Ga. App. 439, 443 (2015) (affirming exclusion of expert testimony regarding a toxicology test not employed in the case, because testimony on the inapplicable testing method was "potentially confusing").

## CONCLUSION

The Court should exclude Dr. Mehlman-Orozco's testimony on her theory of "secondary exploitation" and any testimony commenting on or asserting Plaintiffs' counsel or witnesses are exploiting Plaintiffs. The Court should also preclude Dr. Mehlman-Orozco from offering any testimony on legal standards, her opinions on the TVPRA, and any testimony based on her incorrect definition of a "venture" under the TVPRA. Finally, the Court should exclude any testimony about indicators and misidentification of trafficking in the aviation industry.

Respectfully submitted this 10th day of October, 2023.

|  |  |
|---|---|
| | /s/ *Tiana S. Mykkeltvedt* |
| Patrick J. McDonough | John E. Floyd |
| Georgia Bar No. 489855 | Georgia Bar No. 266413 |
| pmcdonough@atclawfirm.com | floyd@bmelaw.com |
| Jonathan S. Tonge | Tiana S. Mykkeltvedt |
| Georgia Bar No. 303999 | Georgia Bar No. 533512 |
| jtonge@atclawfirm.com | mykkeltvedt@bmelaw.com |
| | Manoj S. Varghese |
| ANDERSEN, TATE & CARR, P.C. | Georgia Bar No. 734668 |
| One Sugarloaf Centre | varghese@bmelaw.com |
| 1960 Satellite Boulevard, Suite 4000 | Amanda Kay Seals |
| Duluth, Georgia 30097 | Georgia Bar No. 502720 |
| (770) 822-0900 – Telephone | seals@bmelaw.com |
| (770) 822-9680 – Facsimile | Michael R. Baumrind |
| | Georgia Bar No. 960296 |
| | baumrind@bmelaw.com |
| | Juliana Mesa |
| | Georgia Bar No. 585087 |
| | mesa@bmelaw.com |

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street, N.W.,
Suite 3900
Atlanta, Georgia 30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

***Attorneys for Plaintiffs***

## **LOCAL RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(C) and does not exceed the page limit imposed by Local Rule 7.1(D).

*/s/ Tiana S. Mykkeltvedt*
mykkeltvedt@bmelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all attorneys of record.

Respectfully submitted this 10th day of October, 2023.

<u>*/s/ Tiana S. Mykkeltvedt*</u>
mykkeltvedt@bmelaw.com